BANK OF ARKANSAS, N.A. *v.* MANA CORPORATION
and First Union National Bank

01-276                                    58 S.W.3d 366

Supreme Court of Arkansas
Opinion delivered November 8, 2001

470

*Everett Law Firm,* by: *Jason H. Wales,* for appellant.

*Hilburn, Calhoon, Harper, Pruniski & Calhoon, Ltd.,* by: *Scott T. Vaughn,* for appellee.

W.H. "DUB" ARNOLD, Chief Justice. Appellant Bank of Arkansas, N.A., appeals the Benton County Circuit Court's award of summary judgment to appellee First Union National Bank (First Union) and dismissal with prejudice of First Union from the case. We affirm.

The parties in this lawsuit include Bank of Arkansas, First Union, and MANA Corporation (MANA). Bank of Arkansas contends that the events leading up to this lawsuit began on October 10, 1997, when First Union credited MANA's account at Bank of Arkansas in the amount of $150,000 as payment by MCI WorldCom under a contract between it and MANA. However, on October 14, 1997, First Union reversed the deposit at the direction of its client, MCI WorldCom, within five days pursuant to National Automated Clearing House Association (NACHA) Rule 2.5.1 which states:

> An Originator may initiate an entry to correct an erroneous credit or debit entry previously initiated to a Receiver's account. The reversing entry must be transmitted to the Receiving ACH Operator in such a time as to be transmitted or made available to the RDFI by midnight of the fifth banking day following the settlement date of the erroneous entry. For this section 2.5 only, an erroneous entry is defined as an entry that (1) is a duplicate of an entry previously initiated by the Originator or ODFI; (2) orders payment to or from a Receiver not intended to be credited or debited by the Originator; or (3) order payment in a dollar amount different than was intended by the Originator.

In short, First Union only had five days to reverse the credit to MANA's account at Bank of Arkansas, which it did, and the reversal had to be for one of the three reasons: a duplicate entry, payment not intended to be credited or debited by MCI WorldCom, or an erroneous entry of an unintended dollar amount. Bank of

Arkansas notified MANA of this entry reversal on October 17, 1997. Until this lawsuit arose, MANA did not complain about the entry reversal or attempt to change that reversal; further, MANA never sued MCI WorldCom on the underlying contract it had with MCI nor sought to implead MCI WorldCom into the case. In other words, no problem with this reversal of funds was ever asserted until this lawsuit, and MCI WorldCom has never been made a party to the case.

About seven months later, MANA's Bank of Arkansas account showed a balance of $3,700.72 on April 2, 1998. On April 6, 1998, at the direction of MCI WorldCom, First Union deposited $175,169 in MANA's Bank of Arkansas account, and on that same day MANA directed Bank of Arkansas to transfer the total amount to MANA's account at the Bank of Bentonville. Bank of Arkansas completed this transfer but failed to debit MANA's account. On April 27, 1998, First Union deposited another $39,300 in MANA's Bank of Arkansas account, and MANA then directed Bank of Arkansas on that same day to transfer $214,585.61 into MANA's Bank of Bentonville account, which Bank of Arkansas did.

At the end of that day, Bank of Arkansas apparently realized its error of failing to debit the April 6, 1998, transfer from MANA's Bank of Arkansas account to MANA's Bank of Bentonville account. However, Bank of Arkansas again waited until May 20, 1998, to debit MANA's Bank of Arkansas account of the $175,169 which should have been subtracted on April 6, 1998. This resulted in MANA being overdrawn in the amount of $171,669.

Bank of Arkansas demanded payment by MANA of the $171,669. MANA first agreed that it would repay the entire amount, but then later tendered only $21,669, leaving $150,000 unpaid. Although MANA had never previously complained about the wire reversal, MANA contended that the entry reversal six months prior on October 14, 1997, of $150,000 was the cause of the overdraft and that First Union's failure to comply with NACHA Rule 2.5.1 caused the overdraft.

On July 21, 1998, Bank of Arkansas filed suit against MANA for breach of contract, and over one year later, on August 4, 1999, Bank of Arkansas amended its complaint to include a claim against First Union under NACHA Rule 2.5.2 which states:

Each ODFI [Originating Depository Financial Institution] shall indemnify every RDFI [Receiving Depository Financial Institution], ACH Operator, and Association from and against any and all claim, demand, loss, liability, or expense, including attorney's fees and costs, that result directly or indirectly from the crediting or debiting of a reversing entry initiated by an Originator through the ODFI.

In November 1999, MANA filed Chapter 11 bankruptcy, triggering an automatic stay. However, the trial court severed Bank of Arkansas's action against First Union, and both parties subsequently filed cross-motions for summary judgment on the issue of indemnification. The trial court conducted hearings on these motions on April 19, 2000, and June 9, 2000, and took the motions under advisement. On June 26, 2000, the trial court granted summary judgment for First Union and dismissed Bank of Arkansas's claims against First Union with prejudice. Bank of Arkansas appealed to the Arkansas Supreme Court, and First Union moved to dismiss arguing that its summary judgment was not a final appealable order because Bank of Arkansas's claims were still pending against MANA. We agreed and remanded to the trial court for further proceedings.

Upon remand, the trial court once again granted summary judgment to First Union, denied Bank of Arkansas's summary judgment, entered summary judgment for Bank of Arkansas against MANA,[1] and dismissed with prejudice Bank of Arkansas's claims against First Union. Bank of Arkansas appealed. As its only point on appeal, Bank of Arkansas asserts that the trial court erred by granting judgment as a matter of law to First Union.

## I. Standard of Review

We have ceased referring to summary judgment as "drastic" remedy. We now regard it simply as one of the tools in a trial court's efficiency arsenal; however, we only approve the granting of the motion when the state of the evidence as portrayed by the pleadings, affidavits, discovery responses, and admissions on file is such that the nonmoving party is not entitled to a day in court, *i.e.*, when there is not any genuine remaining issue of material fact and the moving party is entitled to judgment as a matter of law. *Wallace*

---

[1] The bankruptcy stay had since dissolved.

*v. Broyles*, 332 Ark. 189, 961 S.W.2d 712 (1998). The burden of proving that there is no genuine issue of material fact is upon the movant, and all proof submitted must be viewed favorably to the party resisting the motion. *Ford v. St. Paul Fire & Marine Ins. Co.*, 339 Ark. 434, 5 S.W.3d 460 (1999). On appellate review, we determine if summary judgment was proper based on whether the evidence presented by the movant left a material question of fact unanswered. *City of Dover v. A. G. Barton*, 342 Ark. 521, 29 S.W.3d 698 (2000).

## II. Merits

■ First Union presented in support of its motion for summary judgment affidavits submitted by *Bank of Arkansas* employees. That fact in and of itself is compelling proof that there were no material facts left unanswered in this case. The affidavits of Craig Shy and Larry Kupp, employees and officers of Bank of Arkansas, as well as the affidavit of Carol Sanders, an employee of an affiliate of Bank of Arkansas, the deposition of Craig Shy, and Bank of Arkansas's own internal documents overwhelmingly support First Union's position that summary judgment was properly granted.

■ Bank of Arkansas contends that its loss is due to First Union's reversal of a wire transfer from MCI WorldCom in October 1997 and that under NACHA's operating rules, First Union is required to indemnify Bank of Arkansas for its loss. First Union's response is that the wire reversal in October 1997 is too remote in time to be considered the source of Bank of Arkansas's loss. The trial court agreed with First Union by granting summary judgment in First Union's favor. We agree and hold that there is no connection, either directly or indirectly, between the wire reversal, which occurred some seven months prior to Bank of Arkansas's loss and to which no party had previously objected, and appellant's loss.

■ Any loss suffered by Bank of Arkansas was obviously directly and solely due to Bank of Arkansas's own mistakes in mishandling MANA's. checking account when Bank of Arkansas failed to debit the transfer out of MANA's Bank of Arkansas account to the Bank of Bentonville. We find the discussion of whether the wire reversal by First Union was right or wrong to be irrelevant to Bank of Arkansas's loss. Bank of Arkansas and MANA are clearly the real parties in interest in this case. Further, Bank of Arkansas holds a judgment against MANA; therefore, it has a remedy. We hold that First Union is not liable for Bank of Arkansas's

negligence in this case; as such, summary judgment was properly entered in First Union's favor.

Affirmed.

CORBIN, J., not participating.