Melba LAIRD, Max Laird, Individually and In Their Capacities as Respective Trustees for the Melba Laird Living Trust and Max Laird Living Trust As Maintained By Stephens, Inc. *v.* Sandra SHELNUT, Executrix of the Estate of Don McMann, *Deceased*

01-1155                                             74 S.W.3d 206

Supreme Court of Arkansas
Opinion delivered May 16, 2002

[Petition for rehearing denied June 27, 2002]

634

*Hatfield & Lassiter,* by: *Richard F. Hatfield,* for appellant.

*Baxter, Jenson, Young & Houston,* by: *Ray Baxter,* for appellee.

DONALD L. CORBIN, Justice. Appellants Melba and Max Laird, individually and as respective trustees for the Melba Laird Living Trust and Max Laird Living Trust, appeal the order of the Saline County Chancery Court granting Appellee Sandra Shelnut's motion for summary judgment. On appeal, the Lairds argue that in deciding the issue of summary judgment, the chancellor improperly relied upon a transcript from another court proceeding, and that the proper record reflects genuine issues of material fact. The Lairds argue in the alternative that the chancellor erred in determining that $738,000 was to be held in a constructive trust. This appeal involves an issue of first impression; hence, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(b)(1). We affirm.

The events leading up to the present action date back to the execution of reciprocal wills by Don and Dixie McMann on June 23, 1995. Dixie had contacted attorney John Lovell to discuss the drafting of their wills. Dixie explained that her husband had a problem and that she was sickly. Dixie also told Lovell that her son-in-law was Alfred Shelnut, a friend of Lovell's and Sandra's husband. Lovell went to the McManns' home to meet with the couple on three separate occasions. During the initial meeting, the McManns told Lovell that they wished to leave their entire estate to Sandra, Dixie's daughter. Don also told Lovell that "he had a greedy sister and a worthless husband and he did not want them to share in anything that he and his wife had earned or acquired." During the second meeting, Lovell, at the request of the McManns, explained the effects of the wills to Sandra.

Thereafter, Lovell drafted reciprocal wills on behalf of Don and Dixie. Don's will contained the following reciprocal language:

> FIFTH: I declare that this Will is executed contemporane-
> ously with a Will of similar testamentary plan executed by my

said wife, DIXIE MCMANN, and I declare that my said wife and I have agreed that we shall not alter, amend or change our Wills or do any act or suffer any omission which will have the effect of defeating the testamentary plan stated in our Wills, except by mutual agreement at the time when both of us are alive."

Dixie's will contained identical reciprocal language, but referenced Don as her spouse. The wills appointed Sandra Shelnut as executrix. The McManns' wills provided that upon the death of one of them, their estate would pass to the surviving spouse, until their death, and then the residue would pass to Sandra and Alfred Shelnut.

Dixie passed away on February 2, 1998. Four days prior to her death, Dixie, Don, and Sandra withdrew $900,000 from a joint account titled in all three parties' names, and split the proceeds evenly between Don and Sandra. Following Dixie's death, Don moved in with the Lairds. He added Melba, his sister and only surviving heir, to his investment account, as a joint owner with a right of survivorship. On July 14, 1998, Don executed a new will naming Melba executrix and sole heir.

Upon Don's death on June 5, 1999, Sandra attempted to probate the 1995 will with the Saline County Probate Court. Melba contested the will and sought to probate the 1998 will instead. In an order dated April 19, 2000, the probate court admitted the 1995 will to probate and appointed Sandra executrix. In an unpublished opinion, the court of appeals reversed that order and remanded the case on the ground that the probate court lacked subject-matter jurisdiction to enforce the contract to execute reciprocal wills. See Laird v. Shelnut, CA 00-1226 (Ark. App. Sept. 5, 2001).

While the probate matter was pending, Sandra, acting as executrix of the Estate of Don McMann, filed an action in Saline County Chancery Court requesting an injunction and temporary restraining order preventing the Lairds from accessing or using Don's stock account at Merrill Lynch, Pierce, Fenner & Smith. In her complaint filed on August 16, 1999, Sandra alleged that Don's actions of adding Melba to his stock account and drafting a new

will were prohibited under the language of the reciprocal wills drafted by him and Dixie in 1995. Melba responded that the terms of the 1998 will superseded the 1995 will and that the 1995 will was the product of fraud, coercion, and duress. Melba then filed a counterclaim alleging that Sandra initiated a scheme to defraud Don of his estate and a parcel of real property. Melba requested that the transfers from Don to Sandra prior to his death be set aside.[1]

Sandra subsequently filed two amended complaints. The first sought the imposition of a constructive trust over the assets removed from Don's estate. Next, Sandra filed an "Amended and Substituted Complaint" substituting the defendants as Melba and Max Laird, individually and in their official capacities as trustees, respectively, for the Melba Laird Living Trust and the Max Laird Living Trust. This complaint was filed on April 19, 2000, the same day that the probate court entered its order admitting the 1995 will to probate and appointing Sandra as executrix. Therein, Sandra alleged that during the pendency of the probate proceeding, it was discovered that funds from Don's estate that passed to Melba upon his death, had been transferred into the two living trusts. Sandra requested that the chancellor order the Lairds to return such monies, as well as any earnings resulting from the investment of those monies.

Sandra filed a motion for summary judgment on September 15, 2000, alleging that there were no contested issues of fact to be resolved. Sandra based this motion on the order of the probate court finding that Don executed a contractually binding reciprocal will in 1995, and alleged that because of the validity of that will, the transfers to the Lairds were invalid, and as such, they held the funds in constructive trust. A brief in support of the motion was also filed, and attached to the brief was a copy of Don's 1995 will and a certified copy of a transcript from a hearing in the probate matter. In response to the summary-judgment motion, the Lairds argued that there were questions of fact still at issue. The Lairds

---

[1] The trial court made no ruling on any of the matters raised in this counterclaim, nor does it appear that Appellants ever sought any such ruling. Moreover, Appellants have not raised any allegations regarding the counterclaim on appeal.

also argued that because Shelnut failed to attach any admissible evidence to the pleadings in the case, there was no basis for the chancery court to grant summary judgment.

Sandra specifically alleged in her motion for summary judgment that the amount held by the Lairds in constructive trust was $738,000. This amount was based on the testimony of Martin Northern in a hearing held on September 5, 2000. There, Northern, a stock broker and registered investment advisor, testified that he was able to trace $493,249.18 originally in Don's account to the Laird's living trust accounts. He further testified that the Lairds never contributed to the accounts and that they now contained $737,791.96 that formerly belonged to Don.

The chancellor entered an order on January 12, 2001, granting Sandra's motion for summary judgment. In that order, the chancellor stated that after considering the filings, including the forms of court orders and transcripts from the probate case, he found no unresolved questions of fact remaining. The chancellor specifically found that the Lairds held in constructive trust $738,000, which was Sandra's equitable property, and ordered that the funds not be disturbed, pending the outcome of the appeal in the probate proceeding.

The Lairds appealed to the Arkansas Court of Appeals. Relying on the decision in *Imbraguglio v. Great Atlantic & Pacific Tea Co., Inc.*, 358 Md. 194, 747 A.2d 662 (2000), the court of appeals determined that the probate transcript possessed all the indicia of reliability and was properly considered in granting summary judgment. It thus affirmed the decision of the chancellor. *See Laird v. Shelnut*, 75 Ark. App. 193, 55 S.W.3d 795 (2001). The Lairds petitioned for review of that decision on the basis that the court of appeals' opinion conflicted with our prior holdings and Ark. R. Civ. P. 56(c). When we grant review following a decision by the court of appeals, we review the case as though it had been originally filed in this court. *See Elam v. First Unum Life Ins. Co.*, 346 Ark. 291, 57 S.W.3d 165 (2001); *Regions Bank & Trust v. Stone County Skilled Nursing Facil., Inc.*, 345 Ark. 555, 49 S.W.3d 107 (2001). Thus, we review the trial court's judgment, not that of the court of appeals.

The Lairds raise two points for reversal: (1) the chancellor improperly considered the probate transcript, and that once the transcript is stricken from consideration, the proper record reflects genuine issues of material fact; and (2) the chancellor erred in ordering the Lairds to hold $738,000 in constructive trust for Shelnut. We disagree and affirm the decision of the chancellor.

■ We first turn to the Lairds' argument that the probate transcript was not part of the proper record below and thus should not have been considered by the chancellor. Rule 56 governs summary-judgment proceedings. Pursuant to Rule 56(c)(2), summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The Lairds aver that Rule 56 does not provide for the submission of a trial transcript; therefore, it was error for the chancellor to rely on it in granting summary judgment. Such a narrow interpretation of Rule 56 ignores the fact that a transcript of trial testimony is as reliable as a transcript of deposition testimony or an affidavit, both of which may be considered in summary-judgment proceedings.

■ Other jurisdictions have recognized this reliability factor and allowed the use of trial transcripts in summary-judgment proceedings. In *Farmers Union Oil Co. of Williston v. Harp*, 462 N.W.2d 152 (N.D. 1990), the North Dakota Supreme Court ruled that a trial transcript from a prior proceeding involving different parties was admissible for summary-judgment purposes. In reaching this conclusion, the court cited with approval the following language from a federal court decision: "[T]here is no sensible rationale which would preclude reliance on sworn testimony faithfully recorded during the conduct of a judicially supervised adversarial proceeding. All of the hallmarks of reliability attend upon such trial transcripts." *Id*. at 155 (quoting *United States v. O'Connell*, 890 F.2d 563, 567 (1st Cir. 1989)). The court in *Harp* further stated that affidavits are not subject to cross-examination and reasoned that the degree of reliability attending sworn testimony from a previous trial is as great as the degree of reliability attending affidavits. *Id*.

■ In *Imbraguglio*, 358 Md. 194, 747 A.2d 662, the case relied on by the Arkansas Court of Appeals, the Maryland Court of Appeals stated that a transcript of former testimony was as reliable as an affidavit filed in the summary-judgment context. In allowing for its use, the court noted that a transcript indicates matters the witness would testify to if called in the present case, and like an affiant, the witness gave the testimony under oath.

■ While the *Imbraguglio* court left open the issue whether a transcript involving different parties could be used, the Maryland Special Court of Appeals later addressed that issue in *Shipley v. Perlberg*, 140 Md. App. 257, 780 A.2d 396 (2001). There, the court held that the transcript of a deposition taken in an unrelated case was admissible in a summary-judgment proceeding involving different parties. In support of this conclusion, the Maryland court relied upon the policy issues underlying summary judgment, stating:

> The purpose of the rule is to dispose of cases if there is no genuine factual controversy. Its purpose is not to try the case or resolve factual disputes, but rather to determine whether there is a factual controversy requiring a trial. The purpose of cross-examination, on the other hand, is to elicit the truth, thereby resolving factual disputes. At the summary judgment stage of a case, it is not critical that the party opposing use of a deposition transcript have an opportunity to ferret out the truth of the facts asserted by its opponent through cross-examination. The summary-judgment rule contemplates that summary judgment may be predicated on an affidavit by a non-party affiant who has not been cross-examined. We do not see why this rule should be different for deposition testimony by a non-party.

*Id.* at 272-73, 780 A.2d at 404 (citations omitted).

■ The reasoning in *Shipley* negates the Lairds' argument that *Imbraguglio* is distinguishable from the case at hand, because the Lairds were not parties to the probate action. Moreover, their argument that they were not parties to the probate proceeding is misleading. Melba Laird contested the will that Sandra attempted to probate and offered up a subsequent will instead. She participated in the probate proceedings, including availing herself of the opportunity to cross-examine Lovell. The transcript relied on by

the chancellor was a complete transcript of Lovell's testimony on direct and cross-examination. In sum, we find no merit in the Lairds' argument that the transcript could not be used because this action involves different parties.

We are likewise unpersuaded by the Lairds' reliance on *Pyle v. Robertson*, 313 Ark. 692, 858 S.W.2d 662 (1993), and *Godwin v. Churchman*, 305 Ark. 520, 810 S.W.2d 34 (1991), for the proposition that the transcript could not be considered because it was not attached to the motion for summary judgment, but rather to the supporting brief. *Pyle* and *Godwin* simply stand for the proposition that a trial court may not consider factual *allegations* raised in a party's trial brief or exhibits (emphasis added). Rule 56 does not require a party to attach supporting documents to the motion in order for those documents to become part of the record, and we will not extend our previous holdings to sanction such an absurd result. Having determined that the trial court properly relied on the probate transcript in reviewing the motion for summary judgment, we now turn to the record before us in order to determine if there are any genuine issues of material fact.

We have ceased referring to summary judgment as a "drastic" remedy and now simply regard it as one of the tools in a trial court's efficiency arsenal. *Bank of Arkansas v. Mana Corp.*, 346 Ark. 469, 58 S.W.3d 366 (2001). Summary judgment should only be granted, however, when it is clear that there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. *Id.*; *Elam*, 346 Ark. 291, 57 S.W.3d 165. The purpose of summary judgment is not to try the issues, but to determine whether there are any issues to be tried. *Flentje v. First Nat'l Bank of Wynne*, 340 Ark. 563, 11 S.W.3d 531 (2000). Once the moving party has established a *prima facie* entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appellate review, this court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Wright v. City of Monticello*, 345 Ark. 420, 47 S.W.3d 851 (2001); *Flentje*, 340 Ark. 563, 11 S.W.3d 531. This court views the evidence in a light most

favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Pfeifer v. City of Little Rock*, 346 Ark. 449, 57 S.W.3d 714 (2001). Our review focuses not only on the pleadings, but also on the affidavits and other documents filed by the parties. *Id.*

Remaining mindful of this standard, we now turn to the Lairds' argument that genuine issues of material fact remain as to whether the reciprocal wills created an enforceable contract between Don and Dixie. Specifically, the Lairds alleged that Don's 1995 will was the product of fraud, coercion, and duress and was part of a scheme by Shelnut and her husband to defraud Don of his estate. In support of her motion for summary judgment, Shelnut submitted the sworn testimony of Lovell, the attorney that drafted the McManns' wills, regarding the facts and circumstances surrounding the drafting of the McManns' wills. Lovell testified that Dixie contacted him about drafting wills for her and her husband and that he met with them on three separate occasions. The McManns explained to Lovell that they wanted to draft wills that would leave their entire estate to Shelnut. According to Lovell, Don stated several times that "he had a greedy sister and a worthless husband and he did not want them to share in anything that he and his wife had earned or acquired." Lovell stated that during his second meeting with the McManns, he explained to Shelnut, at the McManns' request, what they wanted to accomplish with their wills. Lovell testified that he believed that the McManns possessed testamentary capacity and that he witnessed no signs of any undue influence. Lovell further testified that, "Mr. McMann was a very educated — or, he appeared to me, a very knowledgeable fellow. And he knew what he wanted, and he told me what he wanted. And I simply did what he told me he wanted."

The transcript is evidence that clearly supports the chancellor's finding that summary judgment was appropriate. Moreover, it is axiomatic that once the moving party has established a *prima facie* entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Foreman Sch. Dist. No. 25 v. Steele*, 347 Ark. 193, 61 S.W.3d 801 (2001); *Pugh v. Griggs*, 327

Ark. 577, 940 S.W.2d 445 (1997). Here, once Shelnut submitted her evidence in support of summary judgment, the Lairds failed to offer any proof that material questions of fact were still in dispute. Thus, we cannot say that it was error for the trial court to grant Shelnut's motion for summary judgment.

█ Alternatively, the Lairds argue that even if the chancellor did not err in granting summary judgement, the finding that $738,000 should be held in constructive trust was clearly erroneous. Specifically, the Lairds argue that the only evidence related to damages was in the form of Northern's testimony at the September 5 hearing and that Northern's conclusion was a mere estimate that did not take into consideration other sources of income deposited into the trust account. The Lairds, however, never raised this argument below, and we will not consider it for the first time on appeal. *See Hurst v. Holland*, 347 Ark. 235, 61 S.W.3d 180 (2001); *Ghegan & Ghegan, Inc. v. Barclay*, 345 Ark. 514, 49 S.W.3d 652 (2001).

Finally, we award Sandra Shelnut, as Appellee, costs in the amount of $250 as reimbursement for the cost of preparing the supplemental abstract in order to correct the Lairds' deficient abstract. *See* Ark. Sup. Ct. R. 4-2(b)(1) (2001).

Affirmed.

GLAZE, BROWN, and IMBER, JJ., dissent.

ROBERT L. BROWN, Justice, dissenting. I disagree with the majority that we can simply amend Rule 56(c) of our Rules of Civil Procedure relating to summary judgment, add a new category of proof, and apply it to the case at hand. The effect of doing that is to blindside opposing counsel by changing the summary-judgment rules while the case is pending on appeal. For that reason, I dissent.

In the present case, two wills of the decedent, Don McMann, are at issue: a 1998 Will naming Melba Laird as executrix and a 1995 Will naming Sandra Shelnut as executrix and executed as part of a reciprocal-will plan with his wife, Dixie McMann. The probate court held a hearing *In the Matter of the Estate of Don*

*McMann*, deceased, and entered an order admitting the 1995 Will to probate.

Sandra Shelnut then sued in Chancery Court to enjoin the Lairds from taking possession of the decedent's common stock and prayed for an order for them to return any common stock or other assets owned by Don McMann at the time of his death. She then moved for summary judgment and attached the transcript from the probate hearing in support of her motion. The Lairds contested the motion on the basis that there was no "admissible evidence" supporting Sandra's motion in the form of depositions, answers to interrogatories, affidavits, or admissions. The chancellor, nonetheless, agreed with Sandra and granted her motion. In that order, the chancellor stated that he based his decision on the court orders and the transcript from the probate case. The probate transcript contained testimony from John Lovell, the attorney who drafted the 1995 Will and a friend of Sandra's husband. Mr. Lovell testified that in his opinion, Don McMann had testamentary capacity and had not been coerced into executing the 1995 will.

A transcript from another proceeding is not listed as something to be considered under our Rule 56(c). That rule plainly states that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact." Our case law has emphasized the importance of these Rule 56(c) parameters:

> "Moreover, by going beyond the pleadings, discovery, and affidavits, the trial court erred for purposes of summary judgment, and the procedure followed did not fall within the specific parameters of Rule 56."

*Godwin v. Churchman*, 305 Ark. 520, 524, 810 S.W.2d 34, 36 (1991). In *Godwin*, the trial court held a hearing and took testimony from all parties and accepted exhibits. That is what we said was inappropriate for summary judgment purposes, unless waived by the parties. *See also Montgomery Ward & Company, Inc. v. Credit*, 274 Ark. 66, 621 S.W.2d 855 (1981) (refusing to consider, on review, oral testimony taken at a hearing for a motion for sum-

mary judgment on the basis that there was no provision for the taking of such testimony in Rule 56).

A practicing attorney reading our Rule 56(c) and the *Godwin* case would reasonably have concluded that previous trial testimony was inappropriate for summary-judgment purposes, absent his agreement that the trial court could consider it. Trial testimony may well be more reliable than an affidavit for summary-judgment purposes, but if we are to change our civil rules, let's do so prospectively and not in the middle of a case. That is what we typically do. *See, e.g., In Re Arkansas Rules of Civil Procedure*, 347 Ark. Appx. 1048 (Jan. 24, 2002) (*per curiam*).

For these reasons, I respectfully dissent.

IMBER, J., joins.

A NNABELLE CLINTON IMBER, Justice, dissenting. My reasons for dissenting are twofold. First, I agree with Justice BROWN's dissenting opinion. Summary-judgment proceedings are governed by Rule 56 of our Rules of Civil Procedure, and a transcript from another proceeding is not listed as something to be considered under Rule 56(c). Second, even assuming that the chancellor properly considered the testimony from the probate court proceedings, I must conclude that genuine issues of material fact remain to be litigated. Both of these points of error have been raised and argued throughout the course of this case.

The moving party here, Sandra Shelnut, claims that she submitted "documentary proof of the entitlement to summary judgment being in the form of transcripts and *findings of fact*, . . . thus establishing the prima facie case." (Emphasis added.) Specifically, she relies on findings in the chancellor's opinion letter dated April 10, 2000, and in the probate court's order entered on April 19, 2000. As mentioned in the majority opinion, the probate court's order has been reversed by the Arkansas Court of Appeals on the basis of lack of subject-matter jurisdiction. *Laird v. Shelnut ex rel. Estate of McMann*, Slip Op., No. CA 00-1226 (Ark. App. Sept. 5, 2001), *pet. for review denied*.

Furthermore, Sandra Shelnut suggests that the issues of material fact in this case "are resolved" by the transcripts of Mr. Lovell's testimony in the probate court proceedings. Mr. Lovell testified that Dixie McMann called him and stated she and her husband wanted to visit with him about making their wills. He went to their house because Dixie indicated Don "had maybe had surgery. Or he had a problem . . . . And that she was kind of sickly." Furthermore, he agreed to visit with the McManns at their home because of his friendship with Alfred Shelnut. While Mr. Lovell did not recall ever representing Alfred Shelnut, he admitted that he may have answered questions for him. Mr. Lovell also confirmed that he had represented several members of Alfred's family, including his parents, his brothers, his niece and nephew, and his daughter. Mr. Lovell further testified that Sandra was present during the second visit with the McManns and that during this visit Alfred pulled up in front of the house. According to Mr. Lovell, he told the Shelnuts that under the reciprocal wills all of the McManns' assets would go to them after the second death.

While Mr. Lovell also testified that he was satisfied the McManns had testamentary capacity and that he had no indication they had been unduly influenced, this court is required to view his testimony in the light most favorable to the Lairds and resolve all doubts in their favor. Viewing the evidence in favor of the Lairds, I must conclude that Mr. Lovell's testimony is sufficient to raise issues of fact as to whether the 1995 will and the property deeds were the result of undue influence exerted by the Shelnuts over Don McMann.

The chancery court concluded there were no unresolved questions of fact because "all the facts pertaining to this proceeding have been *litigated fully* and were completely addressed to this Court in the form of the various filings herein." (Emphasis added.) The standard is whether there is evidence sufficient to raise a fact issue, rather than evidence sufficient to compel a conclusion on the part of a fact finder. *Wallace v. Broyles*, 332 Ark. 189, 961 S.W.2d 712 (1998). Therefore, a review of a summary judgment is not a "sufficiency of the evidence" determination. *Id.* The chancellor ruled that the issues had been "litigated fully," an improper process in the summary-judgment context, and in so

doing, committed prejudicial error. For these reasons, I respect-
fully dissent.

GLAZE and BROWN, JJ., join in this dissent.