IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| Taylor Electric, Inc., a Utah corporation, | ) | MEMORANDUM DECISION |
| | ) | |
| Plaintiff and Appellee, | ) | Case No. 20100124-CA |
| | ) | |
| v. | ) | |
| | ) | F I L E D |
| Fox Construction, Inc., a Utah corporation, | ) | (November 16, 2012) |
| | ) | |
| | ) | 2012 UT App 324 |
| Defendant and Appellant. | ) | |

-----

Third District, Salt Lake Department, 070907234
The Honorable Denise P. Lindberg

Attorneys:    Jeffery R. Price, Salt Lake City, for Appellant
           Lincoln W. Hobbs, Kathy A.F. Davis, and Julie Ladle, Salt Lake City, for Appellee

-----

Before Judges Orme, Davis, and Voros.

ORME, Judge:

¶1    Fox Construction, Inc., challenges the district court's entry of summary judgment in favor of Taylor Electric, Inc., which required Fox Construction to pay Taylor Electric $12,000 pursuant to a settlement agreement between Fox Construction and Taylor Electric's predecessor in interest. Key to the resolution of this appeal is whether the court erred in striking a transcript prepared by Nellyn Cox, the wife of Fox Construction's president, Floyd Cox, which she appended to her affidavit submitted in support of Fox Construction's memorandum in opposition to Taylor Electric's motion

for summary judgment. We review the court's decision to strike the transcript for an abuse of discretion. *See Cabaness v. Thomas*, 2010 UT 23, ¶ 50, 232 P.3d 486.

¶2 Fox Construction contends that the transcript, though not official, is a "true and correct representation" of a prior trial between the parties. The transcript contains testimony from Jerald Taylor, president of Taylor Electric, that contradicts his affidavit in support of Taylor Electric's motion for summary judgment.[1] Taylor Electric argues that the Cox transcript cannot raise a genuine issue of material fact because it is not admissible evidence. Specifically, Taylor Electric contends that the transcript is not admissible because rule 56 of the Utah Rules of Civil Procedure does not allow a court to consider a transcript of prior court proceedings in determining whether summary judgment is appropriate. Moreover, Taylor Electric objects because the transcript is unofficial and was prepared by Nellyn Cox, an interested person, albeit one who is a professional transcriber.

¶3 "When a motion for summary judgment is made and supported by affidavit as provided in Rule 56, an adverse party may not rely upon mere allegations or denials of his pleadings to avoid summary judgment but must set forth specific facts showing that there is a genuine issue for trial." *Bangerter v. Poulton*, 663 P.2d 100, 102 (Utah 1983). A genuine issue of material fact, however, must be based on admissible evidence. *See* Utah R. Civ. P. 56(e); *Gary Porter Constr. v. Fox Constr. Inc.*, 2004 UT App 354, ¶ 20, 101 P.3d 371.

¶4 Rule 56 specifically provides that such facts may be set forth in depositions, answers to interrogatories, admissions, or affidavits. *See* Utah R. Civ. P. 56(c), (e). Federal courts interpreting the 2009 version of the federal rule[2] have held that, although not mentioned in rule 56(e), a court may also consider a transcript of prior testimony in

---

[1]Primarily, Fox Construction contends that the Cox transcript contains testimony in which Jerald Taylor alluded to an accord and satisfaction between Fox Construction and Taylor Electric's predecessor in interest that discharged Fox Construction's obligations under the settlement agreement.

[2]Rule 56(e) of the Utah Rules of Civil Procedure is nearly identical to the former version of rule 56(e) of the Federal Rules of Civil Procedure. *Compare* Utah R. Civ. P. 56(e), *with* Fed. R. Civ. P. 56(e) (2009).

deciding a motion for summary judgment. *See, e.g.*, *Tremont LLC v. Halliburton Energy Servs., Inc.*, 696 F. Supp. 2d 741, 764 n.22 (S.D. Tex. 2010). Likewise, many state courts have concluded that transcripts of prior court proceedings may properly be considered by a court in making a summary judgment determination.[3] *See* Sarah Lorimer Waddoups, *You Can't Tell By Looking: Using Evidence Not Listed in Arkansas Rule of Civil Procedure 56 to Support Summary Judgment Motions*, 56 Ark. L. Rev. 611, 622–38 & nn.136–217 (2003) (reviewing state court decisions allowing trial transcripts and concluding that "every state that has considered the issue has permitted, or at least has not rejected, transcripts from prior proceedings as evidence for summary judgment motions"). Nevertheless, courts that have allowed transcripts of prior proceedings have indicated that "*uncertified* cop[ies] of testimony [are] inadmissible in a summary judgment proceeding." *Steven v. Roscoe Turner Aeronautical Corp.*, 324 F.2d 157, 161 (7th Cir. 1963) (emphasis added). *See also Orr v. Bank of America*, 285 F.3d 764, 776–77 (9th Cir. 2002) (refusing to consider uncertified, unauthenticated transcripts of testimony from a prior trial).

¶5      We believe that transcripts, at least those that are official court records, may be even more reliable than affidavits. Like affidavits, the testimony in a transcript will have been sworn; unlike the statements in an affidavit, it will also have been subject to cross-examination. Indeed, the reason courts have permitted consideration of transcripts, although not expressly mentioned in rule 56, is because transcripts, when certified or official, are inherently reliable. *See United States v. O'Connell*, 890 F.2d 563, 567 (1st Cir. 1989) ("[T]here is no sensible rationale which would preclude reliance on sworn testimony faithfully recorded during the conduct of a judicially-supervised adversarial proceeding. All of the hallmarks of reliability attend upon such trial transcripts.") (citation and internal quotation marks omitted). *See also Fletcher v. Bryan*, 175 F.2d 716, 717 (4th Cir. 1949) (noting that "a certified transcript of a court record is better evidence of its contents than an affidavit with regard thereto"); *Laird v. Shelnut*, 74

---

[3]We note that although some states use a more expansive form of rule 56, *see, e.g.*, Ohio R. Civ. P. 56(c) (expressly allowing "transcripts of evidence" to be considered by a court in determining whether summary judgment is appropriate), states with summary judgment rules similar to Utah's rule 56 have also concluded that a transcript is properly considered by a court in deciding summary judgment, *see, e.g.*, *Laird v. Shelnut*, 74 S.W.3d 206, 210 (Ark. 2002); *Rohlin Constr. Co., Inc. v. Lakes, Inc.*, 252 N.W.2d 403, 405 (Iowa 1977); *Rowland v. Miller's Adm'r*, 307 S.W.2d 3, 6 (Ky. 1956).

S.W.3d 206, 209–10 (Ark. 2002) (explaining that an official "transcript of trial testimony is as reliable as a transcript of deposition testimony or an affidavit, both of which may be considered in summary-judgment proceedings").

¶6      To ensure reliability and accuracy, several of our rules set forth specific requirements relating to transcripts of court proceedings. Notably, rule 4-201 of Utah's Code of Judicial Administration outlines the procedure for obtaining official transcripts of prior court proceedings. *See* Utah R. Jud. Admin. 4-201. Among other things, the rule provides that official transcripts produced from an audio recording of a prior proceeding must be prepared in accordance with rule 12 of the Utah Rules of Appellate Procedure. *See id.* R. 4-201(3)(B). Rule 12 provides that a transcript of an audio recording, like the one at issue here, must be produced by "an official court transcriber." Utah R. App. P. 12. The Code of Judicial Administration sets forth the qualifications of "official court transcribers." *See* Utah R. Jud. Admin. 5-202(2). Among those qualifications is a provision requiring that transcribers "have no conflict of interest in the matters transcribed." *Id.* R. 5-202(2)(B)(iii).[4] Similarly, the analogous rule 28(c) of the Utah Rules of Civil Procedure, governing the taking of depositions, imposes a strict requirement of disinterestedness on the part of those recording depositions. *See* Utah R. Civ. P. 28(c) ("No deposition shall be taken before a person who is a relative or employee or attorney or counsel of any of the parties, or is a relative or employee of such attorney or counsel, or is financially interested in the action.").

¶7      We conclude that the upshot of these cases and rules is that, while trial transcripts are not listed specifically in rule 56, an official transcript—one prepared by a disinterested "official court transcriber"—may appropriately be considered by a court in making a summary judgment determination. We note, however, that a party's ability to rely on transcripts of prior court proceedings is not unlimited. Indeed, as with affidavits, *see* Utah R. Civ. P. 56(e), "[w]hile it is proper for the trial court to consider a

---

[4]The rule also requires, among other things, that an "official court transcriber" be licensed and "attend training required by the appellate court administrator." *See* Utah R. Jud. Admin. 5-202(2)(B)(v). *But see State v. Menzies*, 845 P.2d 220, 226–27 (Utah 1992) (holding that a "de facto" court reporter's transcript was proper). Although she declared herself to be a "professional transcriptionist," there is no indication that Cox is qualified to be an "official court transcriber" under the rule. *See* Utah R. Jud. Admin. 5-202(2).

prior trial transcript, that transcript must set forth facts that would be admissible in evidence." *Farmers Union Oil Co. v. Harp*, 462 N.W.2d 152, 155 (N.D. 1990). *See also Imbraguglio v. Great Atl. & Pac. Tea Co., Inc.*, 747 A.2d 662, 668-69 (Md. 2000) (noting the distinction between the requirements for admitting evidence at trial and the requirements for placing before the court "facts which would be admissible in evidence" in the summary judgment context).

¶8     While Taylor Electric does not contend that any part of the transcript is inaccurate, there is no doubt that the transcript appended to the Cox affidavit is not an official transcript because Nellyn Cox is not an official transcriber as defined in the Code of Judicial Administration.[5] *See* Utah R. Jud. Admin. R. 5-202(2).  More problematic is the fact that Cox, as the spouse of the president of Fox Construction, has a conflict of interest.  *See id.* R. 5-202(2)(B)(iii).  Accordingly, we conclude that the district court did not abuse its discretion when it rejected the transcript tendered by Cox as an attachment to her affidavit.

¶9     Nevertheless, Fox Construction acknowledged that the transcript produced by Cox was not an official transcript.[6]  And because Fox Construction's resistance to summary judgment depended to a large extent on the court's consideration of the transcript of the prior trial,[7] Fox Construction offered to cure the deficiency in the Cox

---

[5]We also reject Fox Construction's argument that the affidavit can be construed as containing, in the form of the appended transcript, Cox's personal knowledge of statements made at the prior trial.  On the contrary, it appears that the affidavit principally avers that the transcription made by Cox was based on her personal familiarity with the *audio recording* of the previous trial.

[6]Fox Construction's stated motivation in submitting the unofficial transcript was merely to save the significant expense of paying an official transcriber to prepare a certified transcript.  In retrospect, this tactic appears to have been "penny wise and pound foolish."

[7]Fox Construction also contends that even without the transcript, a genuine issue of material fact exists because the settlement agreement introduced by Taylor Electric has a different execution date from the settlement agreement put forth by Fox

(continued...)

transcript if the district court was inclined to reject it. Specifically, in its memorandum in opposition to the motion to strike, Fox Construction, though defending the admissibility of the unofficial transcript, volunteered that "[i]f the Court so desires, Fox's Counsel can obtain an official transcript" of the prior trial. The court did not allow Fox Construction to secure an official transcript or otherwise cure the problem presented by its reliance on an unofficial transcript. Moreover, it appears that the court did not offer a reason for denying Fox Construction an opportunity to do so. As a result, and especially because there was no suggestion that the unofficial transcript was inaccurate in any respect, we conclude that the district court exceeded its discretion in refusing Fox Construction's offer to secure an official transcript of the prior trial proceedings upon determining that it would not permit Fox Construction to rely on the unofficial transcript. *See generally Astill v. Clark*, 956 P.2d 1081, 1087 (Utah Ct. App. 1998) (noting that "fundamental fairness" requires that a party be given an opportunity to put forth evidence to rebut inferences that can be drawn from the other party's evidence) (citation and internal quotation marks omitted).

¶10    Accordingly, we reverse and remand to the district court to allow Fox Construction an opportunity to obtain a certified transcript of the prior trial and to submit it in lieu of the transcript prepared by Nellyn Cox.[8] The court may then

---

[7](...continued) Construction. While this discrepancy indeed appears to exist, in the absence of illuminating testimony we are unable to see how it raises a genuine issue of *material* fact.

[8]Under all the circumstances, it would be entirely appropriate to condition Fox Construction's leave to file an official transcript on its payment of Taylor Electric's attorney fees reasonably incurred in successfully opposing consideration of the unofficial transcript submitted by Fox Construction.

determine whether and to what extent the certified transcript contains admissible evidence sufficient to create a genuine issue of material fact.[9]

_____

Gregory K. Orme, Judge

-----

¶11     I CONCUR:

_____

J. Frederic Voros Jr., Judge

-----

DAVIS, Judge (concurring in part and dissenting in part):

¶12     I agree with the majority's conclusion that the district court did not abuse its discretion in determining that the unofficial transcript proffered by Fox Construction was inadmissible, as well as the majority's analysis of that issue.  However, I disagree with the majority that the district court exceeded its discretion in refusing to permit Fox Construction to obtain an official transcript after the unofficial version was rejected.

¶13     "[T]rial courts have broad discretion in matters of discovery."  *Daniels v. Gamma W. Brachytherapy, LLC*, 2009 UT 66, ¶ 54, 221 P.3d 256 (internal quotation marks omitted)

---

[9]We also wish to make clear that although the parties apparently failed to seek transfer of this case to Judge Royal I. Hansen, who presided over the first trial, nothing in this decision forecloses the parties from doing so on remand or the district court from doing so on its own motion.  Indeed, given Judge Hansen's familiarity with the issues in this case and the significant amount of time he invested in the prior trial, it may well be in the interest of judicial economy were this case to find its way back to his docket.

(affirming the district court's exercise of discretion in denying a defendant's motion to amend an expert's deposition). "[T]he exercise of discretion . . . necessarily reflects the personal judgment of the court and the appellate court can properly find abuse only if . . . no reasonable [person] would take the view adopted by the trial court." *State v. Butterfield*, 2001 UT 59, ¶ 28, 27 P.3d 1133 (alterations in original) (internal quotation marks omitted). Under the circumstances presented in this case, I do not believe the position adopted by the district court was unreasonable.

¶14    Even when Fox Construction became aware that the unofficial transcript it provided the court might be deemed inadmissible, it failed to obtain an official transcript, offering to do so only if the district court were inclined to rule against it on the motion to strike. I do not think it is appropriate for a litigant to wait out the district court's decision on an issue and then attempt to cure the problem once the district court has ruled against it. *Cf. Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 862 (5th Cir. 2003) (per curiam) (stating that although the district court could permit a party to supplement the record after the magistrate had made a recommendation concerning summary judgment, litigants would not be permitted to "use the magistrate judge as a mere sounding-board for the sufficiency of the evidence," and affirming the district court's refusal to permit the plaintiff to supplement the record when the plaintiff "waited to offer [the supplemental] evidence until after it was clear that summary judgment for [the defendant] would be granted" (internal quotation marks omitted)). To require the district court to permit such a cure sets an unfortunate precedent that I fear will permit litigants to take a "wait and see" approach to discovery and case preparation. Such an approach is contrary to the interests of judicial economy, and is likely to delay the resolution of cases and unnecessarily subject litigants to uncertainty as to the finality of the district court's admissibility rulings.[1]

---

[1]For example, here the majority emphasized that "there was no suggestion that the unofficial transcript was inaccurate in any respect" in support of its conclusion that the district court should have permitted Fox Construction to obtain the official version after the ruling against it. *Supra* ¶ 9. But there was no reason for Taylor Electric to challenge the accuracy of the transcript if it was inadmissible. Thus, in focusing on the issue actually addressed by Fox Construction—whether the unofficial transcript was admissible—Taylor Electric did not make an argument it might have made had it known that the district court would be obligated to give Fox Construction the chance to

(continued...)

¶15 If Fox Construction wanted to ensure that the evidence in the transcript would be considered, it should have provided the district court with a copy of the official transcript before the district court ruled on the motion to strike. Once Fox Construction instead elected to defend the admissibility of the unofficial transcript, I do not believe it was necessary for the district court to give Fox Construction a further opportunity to obtain an official transcript. *Cf. Chen v. Stewart*, 2004 UT 82, ¶ 48, 100 P.3d 1177 (explaining that "objection[s] should be made to the judge at the earliest possible opportunity" and that parties will not be permitted "to obtain a second bite at the apple by withholding [an] objection" until after a decision is made (internal quotation marks omitted)); *Keiter v. Keiter*, 2010 UT App 169, ¶ 28, 235 P.3d 782 (emphasizing that the parties would "not get a second bite at the evidentiary apple" when an issue was remanded to the district court, despite inadequacies in the evidence presented at trial).

¶16 It is also not apparent from the record whether Fox Construction ever actually attempted to have an official transcript submitted into evidence or whether the district court specifically prohibited Fox Construction from doing so. Fox Construction asserts that "the court could have, and likely should have granted an opportunity for the defendant to obtain an official transcript" after striking the unofficial transcript. However, Fox Construction has not referred us to anything in the record indicating that it sought such an opportunity apart from a passing comment in its memorandum opposing the motion to strike, in which it offered to "obtain an official transcript" "[i]f the Court so desire[d]." But apparently, not having first been given the green light from the district court, Fox Construction elected not to make any formal attempt to submit an official version of the transcript. Instead, Fox Construction continued pursuing its argument that the unofficial transcript should have been admitted, both by renewing its argument in its objection to the proposed order and by challenging the district court's ruling on the motion to strike on appeal.[2]

---

[1](...continued)
obtain an official transcript after ruling on the motion to strike.

[2]On appeal, Fox Construction focuses almost exclusively on the admissibility of the unofficial transcript. Only in passing does it suggest that "[t]he court below could have ordered a 'certified' transcript to be made if there was a real doubt about the accuracy of the transcript" and that "the court could have, and likely should have

(continued...)

¶17    Under these circumstances, I do not believe the district court exceeded its discretion in its treatment of the transcript.  Therefore, I would affirm.

_____

James Z. Davis, Judge

---

[2](...continued)
granted an opportunity for the defendant to obtain an official transcript . . . if it really believed the evidence provided by Ms. Cox to be somehow inherently unreliable." These points were not argued as a ground for reversal but were simply made in support of Fox Construction's argument that the unofficial transcript should have been admitted when there was no indication that it was unreliable.  In addition to the reasons discussed above, I do not believe we should reverse to give Fox Construction a second bite at the apple when even Fox Construction has not articulated an argument for reversal on this ground.