FARMERS' STATE BANK *v.* FOSHEE.

Opinion delivered February 15, 1926.

1.  APPEAL AND ERROR—WAIVER OF ERROR.—Where the record shows that a cause was submitted to the court of equity by consent of the parties, and it appears that chancery had jurisdiction of the subject-matter, towit, the setting aside of a fraudulent conveyance, failure of the trial court to rule upon a demurrer will be treated on appeal as waived.

2.  FRAUDULENT CONVEYANCES—VOLUNTARY CONVEYANCES TO RELATIVES.—Where an embarrassed debtor makes conveyances to his family or near relatives, such conveyances are *prima facie* fraudulent; when voluntary, they are *prima facie* fraudulent, and when the embarrassment of the debtor proceeds to financial wreck, they are conclusively presumed to be fraudulent as to existing creditors.

3.  HOMESTEAD—FRAUDULENT CONVEYANCE.—A conveyance of a homestead, even though without consideration and with full intent to defraud creditors, is valid.

4.  HOMESTEAD—EXTENT OF AREA.—A homestead in any city, town or village, under Const., art. 9, § 5, is limited in area to one acre of land.

Appeal from Johnson Chancery Court; *W. E. Atkinson,* Chancellor; reversed.

*Jesse Reynolds,* for appellant.

*G. O. Patterson,* for appellee.

WOOD, J.  This action was instituted by the appellant against the appellees.  The appellant alleged that W. F. Foshee was indebted to it in the sum of $548 with interest from April 7, 1922; that it had procured a judgment aggregating said amount at the May term, 1923, of the Johnson Circuit Court; that, at the time the debt of W. F. Foshee was contracted with the appellant, he was the owner of eighty acres of land in section 29, township 9 north, range 22 west, of Johnson County, Arkansas, and also a certain town lot containing eight acres in the town of Lamar, in Johnson County, Arkansas.  These tracts and parcels of land are described in appellant's complaint.  The appellant alleged that the land in the town of Lamar was purchased from one M. E. Burgess and wife for a consideration of $4,250, which W. F. Foshee

sold on the 13th of September, 1921, to Nannie Foshee, his wife, naming as the consideration in the deed the sum of $1. It is further alleged in the complaint that in August, 1921, W. F. Foshee conveyed to one Henry Stubblefield one of the forties above mentioned, and on the 16th of November W. F. Foshee conveyed to his son, W. R. Foshee, the other forty in section 29-9-22, for the consideration of $500; that the latter in November, 1921, conveyed to his mother, Nannie Foshee, the other forty, which his father had conveyed to him, naming as a consideration in the deed the sum of $500. The appellant alleged that the conveyances from W. F. Foshee to W. R. Foshee and from W. R. Foshee to Nannie Foshee were without consideration, and therefore voluntary, and made for the purpose of defrauding creditors.

The appellees filed a joint answer, in which they denied the allegations of the complaint, and set up that they had deeded a part of the lands described to one Henry Stubblefield, and stated that the land through mistake had been misdescribed, and they prayed that the deed be reformed and be made to contain the correct description.

The facts are substantially as follows: The appellee, W. F. Foshee, contracted the debt to the appellant upon which this action was founded in November and December, 1919, and July, 1920. The debts were contracted with the Blue Stone Bank, and the appellant acquired the notes from that bank. It was shown that W. F. Foshee owned the property in the country at the time the debts were contracted, and also had a home in the town of Lamar, which property at the time was unincumbered; that the loans were made to him on the strength of his financial condition at that time. The appellant established the indebtedness upon which the action was founded, about which there is no dispute. The appellant also introduced the notes and judgment and copies of the deeds set up in its complaint, which deeds it asked to have canceled. It was shown that

demand had been made on W. F. Foshee for the payment of the indebtedness, and that he had failed to pay.

W. F. Foshee testified on behalf of the appellees to the effect that he sold the southeast forty of the land in the country to one Stubblefield in August, 1921, for the consideration of $2,150. Some time afterwards, on the 16th of October, 1922, he and his wife sold to their son, W. R. Foshee, the other forty, for which he paid $500, $150 cash, and worked out the balance of the consideration. Before the conveyance was made to their son, witness was indebted to the Farmers' State Bank of Lamar. At that time witness owned four forties, and the same was his homestead. The two forties he sold were a part of his homestead. Witness didn't believe he was living on the place when he sold to Stubblefield, but he was living there at the time he sold to his son. At the time witness sold the south forties, two forties had been sold before. He only owned at that time two forties, and at the time he sold these he lived in the town of Lamar. Witness' wife owned the town property. At the time witness sold the forty to Stubblefield he paid the Bank of Lamar a thousand dollars, but did not pay anything on the notes in suit.

Mrs. Nannie Foshee testified, and her testimony is substantially the same as that of W. F. Foshee. She stated they sold the south forty to Stubblefield and the other forty to their son. It was their homestead. The forty sold to their son had a well and a house on it, and the other forty had a fine orchard. At the time they sold to their son he was living with them. He was 22 or 23 years old. He has paid $150 in cash, and then worked out some, and witness paid the rest when she bought it back on the 21st day of October, 1922. The consideration she paid her son was on notes at the Blue Stone Bank, one for $193.35 and one for $165. She took up these notes, and told her son that she would pay W. F. Foshee the balance due him on the forty of $100. She paid this out of her rents on the house in town. They first moved on the 160 acres in the country in 1913, which

was their home. She bought the eight acres in the town of Lamar. She moved to town in 1916 and back to the farm in 1921. After she bought the forty back from W. R. Foshee she owned it until December, 1923, and sold it to the First National Bank of Lamar. She did not buy the land back from her son to defeat her husband's creditors. She paid what it was worth. At the time they sold the property to their son, and at the time she bought it back from him, they lived on the property as their homestead. That was the only forty acres they had. The house and lot in Lamar was conveyed to her on September 13, 1921. The deed recites "for $1 and other considerations." She had signed a mortgage given by her husband to pay security debts and had a verbal contract with him at the time that, when he made her the deed to the Lamar town property, she would sign the mortgage. It was understood between her and her husband, when she conveyed her dower in the forty to Stubblefield and in the other forty and to the other property, that she should have the town property as her own. This was their homestead at the time it was conveyed to her. At the time her husband made her a deed to the home place in Lamar she didn't know anything about his owing these other notes. He had promised her that he would not go security. The deed was not made to her with the view of defeating the appellant in the collection of its debt. The forty acres she had bought back from her son she contracted to sell to the First National Bank of Lamar for $800 on security debts which her husband had contracted for supplies. She stated that, at the time her husband made her the deed to the town property, she knew that he was involved at the First National Bank, and that something had to be done. She had signed a mortgage to the town property in Lamar to the First National Bank for something like $1,900, and at that time she had an understanding with her husband that he was to convey this town property in consideration of her dower rights in the other property. She was to sell the forty acres for this town property. Witness had

previously assigned her dower and homestead right in the old home place for the sum of $3,000, which was paid to her husband.

W. R. Foshee testified substantially to the same effect as his father and mother. He had bought the forty acres from his father. The consideration paid by him was a reasonable value of the land at that time. He didn't know at that time that his father was owing considerable amounts, and didn't make the purchase to defeat his father's creditors. They were living on the land at the time he bought it. Witness had kept an account of the amount of the work he had done for his father, amounting to the sum of $250.

W. F. Foshee also testified that he had an agreement with his wife that, if she would help him pay the security debts, he would give her the home place in the town of Lamar. It was their homestead, and had a mortgage on it in the sum of $1,900. They were living on the farm when they sold that to Stubblefield, and were living in town when that place was deeded to his wife. They were only temporarily on the farm. He didn't make any of the conveyances to defeat his creditors.

John Hawkins, the president of the First National Bank, testified that that bank had a mortgage on the town property in the sum of $758.50. The bank had trouble in getting the mortgage renewed. It had to threaten suit, and Mrs. Foshee finally agreed to sign the mortgage. She and her husband had an agreement in witness' presence that, if she would sign the mortgage, she should have a deed to the property. The bank bought forty acres of land from Mrs. Foshee for $800, of which amount $500 was paid on the debts of Foshee.

W. H. Wilson took the acknowledgment of the deed from W. F. Foshee to Nannie Foshee conveying the town property, and they stated in his presence that W. F. Foshee had agreed with his wife that she should have a deed to the property on condition that she sign a mortgage. Foshee signed the deed on that condition.

The trial court made a general finding in favor of the appellee and rendered a decree dismissing appellant's complaint for want of equity, from which is this appeal.

1. Counsel for appellees contend that the chancery court was without jurisdiction to grant the relief asked because the foundation of the action was a judgment at law against W. F. Foshee as a surety with other sureties and a principal debtor, and that appellant's complaint does not allege that the principal and other sureties were insolvent. Counsel insist that the demurrer to the complaint should have therefore been sustained.

While the record shows that there was a general demurrer filed by the appellees to the appellant's amended complaint, it does not show that the appellees asked that this demurrer be ruled on by the trial court, and does not show that the court ruled on it. On the contrary, the bill of exceptions in the case shows that the cause was, upon the merits, "submitted to the court by agreement and consent of parties in writing, and the cause was heard upon the depositions and certain exhibits." The chancery court had jurisdiction of the subject-matter of setting aside fraudulent conveyances, and, as the appellees waived their demurrer and agreed that the cause be heard by the trial court, they cannot be heard now to say that the chancery court was without jurisdiction to determine the cause.

2. The issue as to whether or not the conveyances were fraudulent is purely one of fact. We have set forth at length the testimony bearing upon this issue, and it could serve no useful purpose to discuss it in detail. A *resumé* of the testimony will show that before W. F. Foshee conveyed the two forties in the country to his son, W. R. Foshee, and Henry Stubblefield, he was indebted to the Bank of Lamar in the sum of nearly $2,000, which was covered by mortgage on the property in the town of Lamar. While so indebted, he conveyed forty acres of his land in the country in August, 1921, to

Henry Stubblefield for $2,150, out of which he satisfied
the mortgage on the town property on September 14,
1921. Then on the 16th of October, 1922, he conveyed
the other forty acres of his land in the country to his
son, W. R. Foshee, for the consideration of $500. His
wife, Mrs. Nannie Foshee, joined in this deed, conveying
her dower and homestead interests. W. R. Foshee, the
son, was living at the time of the conveyance to him with
his father and mother. The consideration of $500,
according to their testimony, was paid, $150 in cash,
and $250 of the balance in work done for his father.
Then, five days after this conveyance, the son deeded the
property which he had bought from his father to his
mother, Nannie Foshee, and, according to their testimony,
she paid for this forty, stating that she paid the same on
notes to the Blue Stone Bank, and that she would pay
his father $100, which was paid some five or ten days
later, but the record does not disclose that she had any
separate estate of her own. Later, on the 13th of Sep-
tember, 1921, W. F. Foshee conveyed the town property
to his wife, Nannie Foshee. She testified that the con-
sideration to her for this conveyance was the dower
interest that she had relinquished in the land sold to
Stubblefield and her son.

It impresses us that the purpose of all these convey-
ances of the property of W. F. Foshee was to place the
property beyond the reach of his creditors. The result
of all the conveyances was that the property, which was
the property of W. F. Foshee when the debts were
contracted, became, through the various deeds, the prop-
erty of Mrs. Foshee, the wife and mother. The law is
well established in this State, and by the authorities gen-
erally, that "where an embarrassed debtor makes con-
veyances to members of his own family—his near rela-
tives—such conveyances are looked upon with suspicion
and scrutinized with care; when voluntary, they are
*prima facie* fraudulent; and when the embarrassment
of the debtor proceeds to financial wreck, they are pre-

sumed conclusively to be fraudulent as to existing creditors." *Wilkes* v. *Vaughan,* 73 Ark. 174-179; *Harris* v. *Smith,* 133 Ark. 250-260; *Davis* v. *Cromer,* 133 Ark. 224.

But the deeds from W. F. Foshee and his wife to their son, W. R. Foshee, and from W. R. Foshee to his mother of the forty acres in the country cannot be set aside on the ground that these deeds were made for the purpose of defrauding creditors, for the reason that the testimony tends to prove that the forty acres conveyed was the homestead of W. F. Foshee. "A conveyance of a homestead, even though made without consideration, and with full intent to defraud creditors, is valid." *Gray* v. *Patterson,* 56 Ark. 373; *Sharp* v. *Fitzhugh,* 75 Ark. 562; *Fluke* v. *Sharum,* 118 Ark. 229; *Godfrey* v. *Herring,* 74 Ark. 186, and other cases collated in 3 Crawford's Digest, p. 2334. But the conveyance of the town property, consisting of eight acres, should be set aside as fraudulent and void, even though the homestead of W. F. Foshee and his wife was on this property. Under our Constitution, article 9, § 5, "the homestead in any city, town or village, owned and occupied as a residence, shall consist of not exceeding one acre of land, with the improvements thereon to be selected by the owner, provided the same shall not exceed in value the sum of twenty-five hundred dollars, and in no event shall the homestead be reduced to less than one quarter of an acre of land, without regard to value." The testimony tended to prove that this property at the time of the conveyance was the homestead of W. F. Foshee and his wife, Nannie Foshee. Being their homestead, they were entitled to one acre thereof to be selected by them.

It follows that the decree of the trial court was erroneous. The same is therefore reversed, and the cause will be remanded with directions to set aside the deed of W. F. Foshee to Nannie Foshee, conveying the town property, and to allow them to select one acre as their homestead, and to subject the remainder thereof to the payment of Foshee's debt to the appellant.