George T. GINSBURG, Mildred Ginsburg Baron,
William Mac Ginsburg and A.G. Edwards & Sons, Inc. *v.*
Phyllis GINSBURG

02-707                                    120 S.W.3d 567

Supreme Court of Arkansas
Opinion delivered June 26, 2003

*J. Sky Tapp*, for appellants.

*Richard L. Slagle* and *Morse U. Gist, Jr.*, for appellee.

RAY THORNTON, Justice. Appellants, George T. Gins-burg, Mildred Ginsburg Baron, and William Mack Ginsburg, appeal the Garland County Probate Court's grant of summary judgment in favor of appellee, Phyllis Ginsburg, the wife of Al Ginsburg, who died intestate, and the administratrix of his estate. At issue is a transfer-on-death account ("TOD account") established by the decedent naming appellants, his children from a former marriage, as the beneficiaries. We reverse the trial court's grant of summary judgment, and we remand with instructions.

On May 9, 1987, appellee and the decedent were married, and on May 14, 2000, they separated. On June 2, 2000, appellee filed for divorce, and on June 6, 2000, the decedent was served with a divorce complaint and summons. On June 19, 2000, the decedent established a TOD account with A.G. Edwards & Sons, Inc. ("A.G. Edwards"), which provided that the proceeds of the account would be divided upon the decedent's death and paid equally to appellants, his children by a former wife. The TOD account had a market value of $243,083.00 and a position value of $177,258.00 at the time of the decedent's death. In August of 2001, appellee and the decedent began cohabitating again. During November of 2001, the decedent became ill, and appellee cared for him. The decedent died on November 13, 2001. The divorce proceedings brought by appellee were never finalized.

Upon the decedent's death, appellee opened his estate and obtained an appointment as the administatrix. Appellee then filed a petition to set aside a fraudulent transfer under Ark. Code Ann. § 28-49-109 (1987), and on December 3, 2001, obtained a tem-

porary restraining order that prevented A.G. Edwards from disbursing the account to appellants.

On January 7, 2002, appellee filed a motion for summary judgment, arguing that the account should be brought into the estate on two grounds: (1) that the transfer was fraudulent and (2) that the transfer was meant to deprive appellee of the rights and benefits arising from her marriage with the decedent. After a hearing on appellee's motion for summary judgment, the trial court granted the motion, setting aside the transfer by the decedent on the basis that (1) the transfer was made in anticipation of appellee's suit for divorce and alimony and that (2) the transfer was made to deprive appellee of her rights and benefits arising from the marriage. In a letter order dated April 1, 2002, the trial court found that, as a matter of law, the death of the decedent "had the effect of abating the divorce suit and bringing [appellee's] widow's dower rights into choate existence." On April 10, 2002, a final order was entered.

On April 19, 2002, appellants filed a motion for reconsideration, and on May 1, 2002, appellants timely filed a notice of appeal. On May 6, 2002, the trial court denied appellant's motion for rehearing and ordered A.G. Edwards to hold the TOD account in an interest-bearing account pending further orders from the trial court. It is from the trial court's grant of summary judgment that appellants bring their appeal.

■ ■ Our standard of review for summary-judgment cases is well established. *Stephens v. Petrino*, 350 Ark. 268, 86 S.W.3d 836 (2002). Summary judgment should only be granted when it is clear that there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. *Id.* (citing *City of Barling v. Fort Chaffee Redev. Auth.*, 347 Ark. 105, 60 S.W.3d 443 (2001)). The purpose of summary judgment is not to try the issues, but to determine whether there are any issues to be tried. *Id.* (citing *BPS, Inc. v. Parker*, 345 Ark. 381, 47 S.W.3d 858 (2001)).

■ ■ We have ceased referring to summary judgment as a "drastic" remedy and now simply regard it as one of the tools in a trial court's efficiency arsenal. *Laird v. Shelnut*, 348 Ark. 632, 74

S.W.3d 206 (2002). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* We view the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Our review focuses not only on the pleadings, but also on the affidavits and other documents filed by the parties. *Id.* Moreover, "[i]f a moving party fails to offer proof on a controverted issue, summary judgment is not appropriate, regardless of whether the nonmoving party presents the court with any countervailing evidence." *Harasyn v. St. Paul Guardian Ins. Co.,* 349 Ark. 9, 75 S.W.3d 696 (2002).

In the threshold issue in this case, appellants argue that the trial court erred in finding that the decedent's death negated the requirement of determining whether the TOD account was marital or nonmarital. Specifically, appellants contend that the money used to purchase the TOD account came from the decedent's separate funds.

■ At the outset, we note the following well-established principle that death abates a divorce suit, and it becomes our duty as an appellate court to review a decree when property rights are involved. *See Speer v. Speer,* 298 Ark. 294, 766 S.W.2d 927 (1989); *Owen v. Owen,* 208 Ark. 23, 184 S.W.2d 808 (1945); *Bradshaw v. Sullivan,* 160 Ark. 547, 254 S.W. 1064 (1923); *Strickland v. Strickland,* 80 Ark. 451, 97 S.W. 659 (1906).

In *Speer, supra,* we cited with approval the following:

> The same reasoning is found in 33 A.L.R. 4th 47, Divorce-Death Pending Appeal (1984), *i.e.,* that a divorce action is purely personal and consequently terminates on the death of either spouse, but a different result is effected when property rights are involved: "This proposition [that the action is purely personal] is to be distinguished from the view taken in cases in which the death occurs after the final decree of divorce but during the time when an appeal may be taken. The general rule applied in cases

involving such appeals is that the action abates with respect to the issue of the marital status of the parties but not with respect to the determination of property interests which may be affected by the divorce." *Id*, at § 2. To the same effect *see* 24 Am. Jur. 2d, Divorce and Separation § 177 (1983).

*Speer, supra.*

In the present case, appellee and the decedent were involved in divorce proceedings at the time of his death, but a divorce decree was never entered. The parties were still married at the time of the decedent's death. For that reason, there is no issue with regard to marital property, as defined by Ark. Code Ann. § 9-12-315 (Repl. 2002), because there was no divorce. We have said that the purpose of Ark. Code Ann. § 9-12-315 is to effect the equitable distribution of property upon divorce. *Canady v. Canady*, 290 Ark. 551, 721 S.W.2d 650 (1986).

However, we must address the issue whether the decedent's TOD account was owned as the separate property of the decedent. Under Ark. Code Ann. § 9-11-505 (Repl. 2002), a married person may own "sole and separate property." *Id*. The statute states:

> (a) The real and personal property which any married person now owns, or has had conveyed to him or her by any person in good faith and without prejudice to existing creditors; which is acquired as sole and separate property; which comes to him or her by gift, bequest, descent, grant, or conveyance from any person; which he or she has acquired by trade, business, labor, or services carried on or performed on his or her sole or separate account; which a married person in this state holds or owns at the time of the marriage, and the rents, issues, and proceeds of all such property shall, notwithstanding the marriage, be and remain his or her sole and separate property.

> (b) The separate property may be used, collected, and invested by him or her, in his or her own name, and shall not be subject to the interference or control of his or her spouse nor shall it be liable for the spouse's debts, except as may have been contracted for the support of the spouse, or support of the children of the marriage by the spouse or his or her agent.

*Id.*

Appellee advances the argument that *Hamilton v. Hamilton*, 317 Ark. 572, 879 S.W.2d 416 (1994), is controlling on the issue whether she should be permitted to take against the TOD account. In *Hamilton, supra,* a divorce action was pending at the time the husband died, and we held that his widow could take against his will. *Id.* We stated:

> Hamilton's death had the effect of terminating the divorce action. Hence, the parties were still married under our laws when Hamilton died. His widow's election to take against his will was appropriate, the pending divorce action notwithstanding.

*Hamilton, supra* (citations omitted).

However, *Hamilton* is not dispositive on the issue in the present case because there still remains a fact question whether the TOD account was separate property under Ark. Code Ann. § 9-11-505. Here, there is evidence that the funds used to purchase the account were made from the decedent's separate property. According to an affidavit filed by appellee Mildred "Millie" Ginsburg Baron, she states:

> [M]y father and Phyllis kept everything separate, including bank accounts. My father never put her name on any deeds, or titles to property, or ever gave her any interest in any of his business interests, and she certainly never had access to any of my father's accounts, even though she did work at Mid-American Motors for a time during their marriage.
>
> As far as the money that was placed in the A.G. Edwards account, I personally know this money came from an account in his name alone. He wanted it placed into three (3) separate accounts for myself and my two (2) brothers, in equal shares, upon the death of our father. Phyllis knew about this and never did anything to controvert it or question it until after the death of our father. . . . I genuinely believe that the only reason she is doing this is because her lawyers have told her she might have a chance to get it.
>
> * * *
>
> He had never commingled those funds with [appellee's] funds or put them in their joint names, and *those funds came specifically from assets and business interests my father had well before his marriage to Phyllis.* (Emphasis added.)

■ Based upon this affidavit filed by appellant Baron, there appears to be a genuine issue of material fact as to the ownership of the TOD account. Thus, under our standard of review, appellants met proof with proof under *Laird, supra* by offering the affidavit of appellant Baron. This question of fact regarding ownership of the TOD account remains to be determined.

Appellants also contend that the trial court erred in granting summary judgment in favor of appellee as to the TOD account because a question of fact remains as to whether the TOD account was purchased for the purpose of fraudulently transferring assets to the decedent's children. We agree that a question of fact remains unresolved.

■ Arkansas Code Annotated § 28-49-109 (1987) governs fraudulent conveyances. The statute provides:

> (a) A personal representative of a grantor who has fraudulently conveyed or transferred any interest in real or personal property with intent to delay his creditors in the collection of their just demands, may apply to a court of competent jurisdiction to have the conveyance or transfer set aside and cancelled and to recover the property, or the value thereof, for the use and benefit of all persons having an interest in the estate of the fraudulent grantor.

> (b) No property so conveyed or transferred shall be taken from, nor shall any recovery be had from, any person who acquired any legal interest therein for a valuable consideration in good faith and without notice.

*Id.* The Eighth Circuit Court of Appeals has said that "The Supreme Court of Arkansas has recognized certain indicia of fraudulent intent . . . . Transfers to a debtor's family members are particularly suspect[.]" *United States v. Bryant*, 15 F.3d 756 (8th Cir. 1994).

The trial court based its granting summary judgment in favor of appellee upon *Hardy v. Hardy*, 228 Ark. 991, 311 S.W.2d 761 (1958) and *Rush v. Smith*, 239 Ark. 706, 394 S.W.2d 613 (1965). In *Hardy, supra*, the wife instituted divorce proceedings against her husband during which time the husband transferred all of his stocks to his mother, Ms. Corinne Hardy. The trial court

appointed a special master to inquire into the stock holdings of the husband, and the trial court adopted the master's findings awarding the wife her dower interest in the stocks, subject to a lien held by Ms. Hardy. The wife appealed, and we held that the husband entered into a scheme with his mother to defraud the wife of her statutory rights in his personal property. *Id.* We stated:

> The speed with which the transaction was handled following the filing of the divorce action is potent evidence in behalf of appellant. Though the plant had been contemplated for at least a year, the essential and necessary steps in organizing the corporation and in financing the construction of same, including the pledges and mortgages given by Robert Hardy, took place in a period of less than two weeks - all subsequent to the filing of the divorce complaint.

*Id.*

The trial court cited *Rush, supra* for the proposition that a husband's sale of stock to his sister during his divorce proceedings was "a sham," *id.*, and did not divest the husband of his property rights to which the division of property was subject. *Id.* We stated:

> We think it almost too plain for argument that the supposed sale was in fact a sham that did not divest Paul Rush either of his ownership of the stock or of his control over it. A husband's colorable disposition of assets to defeat his wife's property rights in a pending or anticipated divorce suit may be found to be fraudulent. *Dowell v. Dowell*, 207 Ark. 578, 182 S.W.2d 344 (1944); *Wilson v. Wilson*, 163 Ark. 294, 259 S.W. 742 (1924); *Austin v. Austin*, 143 Ark. 222, 220 S.W. 46 (1920). It cannot be doubted that Paul Rush's ostensible sale to his sister was intended to hinder Virginia Rush in the assertion of her property rights.
>
> * * *
>
> There are several other indications of a fraudulent intent. The transfer was to a close relative of Paul Rush. *Farmers' State Bank v. Foshee*, 170 Ark. 445, 280 S.W. 380 (1926).

*Id.* See also *Lovell v. Marianna Federal Savings & Loan Assoc.*, 264 Ark. 99, 568 S.W.2d 38 (1978); *Pierson v. Barkley*, 253 Ark. 131, 484 S.W.2d 872 (1972).

In these cases, a substantial part of the husband's property was transferred to a family member in an effort to prevent the wife from claiming her statutory share. Here, unlike the transfers in *Hardy, supra,* and *Rush, supra,* the TOD account, which distributed that account to his children, did not constitute a large part of the decedent's estate. According to an answer filed by A.G. Edwards on December 20, 2001, the TOD had an approximate market value of $243,083.00; however, the total position value as of December 18, 2001, was $177,258.00. According to appellee's affidavit, the other assets of the decedent's estate included a lake house valued at $300,000.00, property on Central Avenue valued at $150,000.00, a vacant lot worth $30,000.00, and approximately $4,000.00 in other liquid assets. Additionally, an inventory of the estate of the decedent, which was submitted by appellee, reveals that his total estate was worth $814,000.00, which included all real and personal property.

■ We note that TOD accounts are governed by Ark. Code Ann. § 28-14-106 (Supp. 2001), which provides:

> The designation of a TOD beneficiary on a registration in beneficiary form has no effect on ownership *until the owner's death*. A registration of a security in beneficiary form may be cancelled or changed at any time by the sole owner or all then surviving owners without the consent of the beneficiary.

*Id.* (emphasis added). Because TOD accounts do not vest "until the owner's death," *id.,* it remains unclear how this type of account could be considered a fraudulent transfer to defeat a spouse's statutory rights to the estate when the owner will have no benefit of the transfer. The circumstances here are distinguishable from our precedent in *Hardy, supra,* and *Rush, supra.*

■ Appellee makes the argument that fraudulent intent may be shown by the decedent's purchase of the TOD account, which included the naming of appellants as the beneficiaries, approximately three weeks after appellee filed for divorce. This argument is plausible, but not conclusive. Therefore, we remand to the trial court for a determination of an additional fact question regarding the decedent's intent to establish the TOD account shortly after appellee's filing for divorce.

Appellants further argue that the trial court erred by finding that appellee's dower rights came into choate existence upon the death of the decedent. In support of their argument, appellants cite Chapter 14 of the Uniform Transfer on Death Security Registration Act, codified at Ark. Code Ann. § 28-14-107 (Supp. 2001), which provides:

> On death of a sole owner or the last to die of all multiple owners, ownership of securities registered in beneficiary form passes to the beneficiary or beneficiaries who survive all owners. On proof of death of all owners and compliance with any applicable requirements of the registering entity, a security registered in beneficiary form may be reregistered in the name of the beneficiary or beneficiaries who survived the death of all owners. Until division of the security after the death of all owners, multiple beneficiaries surviving the death of all owners hold their interests as tenants in common. If no beneficiary survives the death of all owners, the security belongs to the estate of the deceased sole owner or the estate of the last to die of all multiple owners.

*Id.*

Upon the death of the decedent, the ownership of the TOD account passes to the beneficiaries. *See* Ark. Code Ann. § 28-14-107 (Supp. 2001). We have said that, under the statutes of this state, only the widow is entitled to dower. *Wood v. Wood*, 59 Ark. 441, 27 S.W. 641 (1894). A widow's right of dower, even in real property, remains only an inchoate right until the husband's death. *Mickle v. Mickle*, 253 Ark. 663, 488 S.W.2d 45 (1972). The status of an estate is fixed upon death, and the property interest is in the property as it existed at that time. *See Atkinson v. Van Echaute*, 236 Ark. 423, 366 S.W.2d 273 (1963). When a dower interest vests upon the death of a husband, she possesses a life estate and is entitled to a one-third share. *Id.*

We view this issue as one that can be resolved upon a determination of the ownership of the TOD account by the trial court upon remand. If the TOD account was owned by both the decedent and appellee, then she can claim her dower rights in the property. If the account is considered separate property owned by the decedent, then the property will pass to the beneficiaries.

■    Therefore, we hold that the trial court erred in granting summary judgment in favor of appellee because genuine issues of material fact remain to be resolved.  Accordingly, we reverse and remand.

CORBIN, J., not participating.