Phyllis GINSBURG *v.* George GINSBURG, Mildred R. Baron, William Mac Ginsburg, and A.G. Edwards & Sons, Inc.

04-62                                          195 S.W.3d 898

Supreme Court of Arkansas
Opinion delivered October 21, 2004

*Slagle & Gist*, by: *Richard L. Slagle* and *Morse U. Gist, Jr.*, for appellant.

*J. Sky Tapp*, for appellees.

DONALD L. CORBIN, Justice. Appellant Phyllis Ginsburg appeals the order of the Garland County Circuit Court finding that funds placed by her late husband, Al Ginsburg, into a transfer-on-death (TOD) account were the sole and separate property of the decedent and that, therefore, the funds now belonged to his three children, Appellees George Ginsburg, Mildred R. Baron, and William Mac Ginsburg, as the named beneficiaries of the TOD account. For her sole point on appeal, Appellant contends that the trial court erred in this ruling. This is the second appeal of this matter to this court. *See Ginsburg v. Ginsburg*, 353 Ark. 816, 120 S.W.3d 567 (2003). Accordingly, our jurisdiction of this appeal is pursuant to Ark. Sup. Ct. R. 1-2(a)(7). We find no error and affirm.

The record reflects that Appellant and the decedent were married on May 9, 1987, and separated on May 14, 2000. On June 2, 2000, Appellant filed for divorce, and on June 6, the decedent was served with the divorce complaint and summons. On June 19, the decedent established a TOD account with Appellee A.G. Edwards & Sons, Inc., which provided that the proceeds of the account would be divided upon the decedent's death and paid equally to Appellees, his children by a former wife. In August 2001, Appellant and the decedent began living together again. During November of that year, the decedent became ill, and Appellant cared for him. The decedent died intestate on November 13, 2001. The divorce proceedings were never finalized prior to the decedent's death.

Upon the decedent's death, Appellant opened his estate and obtained an appointment as administratrix. Appellant then filed a petition to set aside the decedent's placement of the TOD funds as a fraudulent transfer, pursuant to Ark. Code Ann. § 28-49-109 (Repl. 2004), and obtained a temporary restraining order preventing A.G. Edwards from disbursing the TOD account to Appellees. At the time of the decedent's death, the TOD account had a market value of $243,083 and a position value of $177,258.

In January 2002, Appellant filed a motion for summary judgment, arguing that the TOD account should be brought into the estate on two grounds: (1) that the transfer was fraudulent and (2) that the transfer was meant to deprive her of the rights and benefits arising from her marriage with the decedent. The trial court granted Appellant's motion. This court reversed on the ground that there were remaining issues of fact as to whether the TOD was separate property under Ark. Code Ann. § 9-11-505 (Repl. 2002), and, if not, whether the account was purchased for the purpose of fraudulently depriving Appellant of her interest in the property. This court held: "If the TOD account was owned by both the decedent and [Appellant], then she can claim her dower rights in the property. If the account is considered separate property owned by the decedent, then the property will pass to the beneficiaries." *Ginsburg*, 353 Ark. at 827, 120 S.W.3d at 574.

Following this court's mandate, the trial court held a hearing on October 17, 2003. Appellant was the sole witness called on her behalf, while Appellees relied on the affidavit of Appellee Mildred Baron, which was presented to the court prior to the first appeal. At the conclusion of the hearing on this issue, the trial court ruled that there was not sufficient proof to support Appellant's claim that the TOD funds were marital property. To the contrary, the trial court found that the statements made by Appellee Baron in her affidavit had not been refuted by Appellant. Thereafter, in an order entered on October 21, 2003, the trial court found that the TOD account was owned by the decedent and was his sole and separate property. The court found further that there was no evidence of fraudulent conduct on the part of the decedent. Accordingly, the trial court ruled that the TOD was now the property of the Appellees, as the named beneficiaries. Appellant now appeals this ruling.

We review probate proceedings *de novo*, but we will not reverse the decision of the circuit court unless it is clearly erroneous. *McAdams v. McAdams*, 353 Ark. 494, 109 S.W.3d 649 (2003); *Dillard v. Nix*, 345 Ark. 215, 45 S.W.3d 359 (2001). We will not set aside the circuit court's findings of fact, whether based on oral or documentary evidence, unless they are clearly erroneous or clearly against the preponderance of the evidence. Ark. R. Civ. P. 52(a); *Butt v. Evans Law Firm, P.A.*, 351 Ark. 566, 98 S.W.3d 1 (2003). Moreover, in reviewing the proceedings, we give due regard to the opportunity of the circuit court to judge the credibility of the witnesses. *Id.* With this standard in mind, we turn

to the merits of Appellant's argument that the trial court erred in finding that the TOD account was the sole and separate property of the decedent.

TOD accounts are governed by the Uniform TOD Security Registration Act, Ark. Code Ann. §§ 28-14-101 to -112 (Repl. 2004). Pursuant to section 28-14-106, the designation of a TOD beneficiary on a registration in beneficiary form has no effect on ownership until the owner's death; thus, a registration of a security in beneficiary form may be cancelled or changed at any time by the owner without the consent of the beneficiary. A TOD account resulting from a registration in beneficiary form "is effective by reason of the contract regarding the registration between the owner and the registering entity and this chapter and is not testamentary." Section 28-14-109(a). Thus, pursuant to section 28-14-107, TOD accounts are payable to the beneficiary or beneficiaries upon the death of the owner; they do not become assets of the owner's estate unless no designated beneficiary survives the death of the owner. In the present case, the named beneficiaries, Appellees, all survived the death of their father, the owner of the TOD account.

The issue in this appeal is whether the TOD account and the funds used to purchase it were the sole and separate property of the decedent. If so, the decedent had the authority, pursuant to section 9-11-505, to establish the account and name his three children as its beneficiaries. Section 9-11-505 provides:

> (a) The real and personal property which any married person now owns, or has had conveyed to him or her by any person in good faith and without prejudice to existing creditors, *which is acquired as sole and separate property*, which comes to him or her by gift, bequest, descent, grant, or conveyance from any person, which he or she has acquired by trade, business, labor, or services carried on or performed on his or her sole or separate account, *which a married person in this state holds or owns at the time of the marriage*, and *the rents, issues, and proceeds of all such property shall, notwithstanding the marriage, be and remain his or her sole and separate property.*

> (b) *The separate property may be used, collected, and invested by him or her, in his or her own name, and shall not be subject to the interference or control of his or her spouse* nor shall it be liable for the spouse's debts, except as may have been contracted for the support of the spouse, or support of the children of the marriage by the spouse or his or her agent. [Emphasis added.]

Under this provision, property is separate property, and not marital, if it is acquired as sole and separate property and is held or owned at the time of the marriage.

The record demonstrates the following undisputed facts. The funds used by the decedent to purchase the TOD account were gained as a result of the sale of the decedent's business, Mid-American Motors. Mid-American Motors was purchased by the decedent prior to his marriage to Appellant and was owned solely by him. Appellant worked as a secretary at Mid-American Motors both prior to and during her marriage to the decedent, and she was compensated for her employment. Appellant never had any authorization to sign checks on behalf of Mid-American Motors. The decedent kept a separate checking account in his sole and separate name, and Appellant had no authorization to use that account. When the decedent sold Mid-American Motors, the check for the purchase price was made out solely to him.

Prior to the first appeal of this matter, Appellees offered the affidavit of Appellee Mildred Baron as proof that the TOD account was the decedent's own separate property. Her affidavit, which this court discussed in *Ginsburg I*, provided the following information:

> [M]y father and Phyllis kept everything separate, including bank accounts. My father never put her name on any deeds, or titles to property, or ever gave her any interest in any of his business interests, and she certainly never had access to any of my father's accounts, even though she did work at Mid-American Motors for a time during their marriage.
>
> As far as the money that was placed in the A.G. EDWARDS account, I personally know this money came from an account in his name alone. He wanted it placed into three (3) separate accounts for myself and my two (2) brothers, in equal shares, upon the death of our father. Phyllis knew about this and never did anything to controvert it or question it until after the death of our father. I certainly know that from the time she filed the divorce, some time in the first part of June, 2000, that they discussed back and forth, reconciling and getting back together and then splitting again, but at no time did she ever question what he had done with the funds placed in the A.G. EDWARDS account and frankly, I genuinely believe that the only reason she is doing this is because her lawyers have told her she might have a chance to get it.

> I absolutely know and would have testified at the trial and will testify in this hearing, when it is held, the funds my father put in the A.G. EDWARDS account were his alone. He had never commingled those funds with her funds or put them in their joint names, and those funds came specifically from assets and business interests my father had well before his marriage to Phyllis. . . .

> I can also absolutely state that Dad had earmarked the money he put in this account for us three (3) children, and Phyllis had always known of that fact and spoke of it openly with family members, including me. While she tried to get Dad to include her on this money on many occasions, both before and after the filing of the divorce, he would never agree to give her that money and specifically told her that he owed this to his children.

Despite the compelling nature of the undisputed facts and the evidence given by Appellee Mildred Baron, Appellant argues that the trial court erred in finding that the TOD account was the sole and separate property of the decedent. She argues that although the decedent may have been careful not to give her any ownership interest outright, the business was marital property because the majority of the mortgage payments for the business were paid during their marriage. She argues further that her interest in the property is evident from the facts that (1) both she and the decedent signed a line of credit with the Chrysler Credit Corporation for the business; (2) both she and the decedent signed a promissory note to finance other real property; and (3) she and the decedent filed joint tax returns.

■ Appellant makes no convincing argument as to how these facts demonstrate her property interest in the TOD account. Moreover, she has failed to cite convincing legal authority to support her argument. This court has repeatedly stated that it does not consider assignments of error that are unsupported by convincing argument or sufficient legal authority. *See, e.g, Omni Holding & Dev. Corp. v. 3D.S.A., Inc.*, 356 Ark. 440, 156 S.W.3d 228 (2004); *City of Benton v. Arkansas Soil & Water Conserv. Comm'n*, 345 Ark. 249, 45 S.W.3d 805 (2001). This alone is sufficient reason not to address this issue. *Id.*

Notwithstanding, we conclude that the trial court did not clearly err in finding that the TOD account was the sole and separate property of the decedent. The funds used to purchase the account were gained as the result of the sale of the decedent's

business, a business which he had acquired before his marriage to Appellant and continued to hold as his separate property during the course of the marriage. Appellant admittedly had no ownership interest in the business, and she was never authorized to write checks on behalf of the business. When the business was sold, the proceeds were paid by a check payable solely to the decedent.

There was no commingling of any funds between Appellant and the decedent once they were married. Indeed, the decedent kept a separate checking account of which Appellant was not authorized to use. It is of no consequence that the mortgage on the business was paid during the course of their marriage, as there is no evidence that the mortgage payments were made from marital funds. From the record before us, it is just as likely as not that the mortgage payments were made from the decedent's separate checking account or from the proceeds of the business itself. Moreover, it is of no consequence that Appellant worked at Mid-American Motors during the time of their marriage, because the evidence shows that she was separately compensated for her work.

■ As for the documents offered by her below, namely, the line of credit with Chrysler, the promissory note used to finance other real property, and the joint tax return, Appellant has presented no authority or convincing argument as to how these documents serve as indicia of her ownership interest in Mid-American Motors. Accordingly, we conclude that Appellant has not met her burden of showing that the trial court clearly erred in finding that the TOD account was the sole and separate property of the decedent, and we affirm the trial court's judgment awarding the TOD funds to Appellees.