Karen BARNES *v.* John C. EVERETT

01-1148 95 S.W.3d 740

Supreme Court of Arkansas
Opinion delivered January 23, 2003

*McMath, Vehik, Drummond, Harrison & Ledbetter, P.A.*, by: *Phillip H. McMath*, for appellant.

*Barber, McCaskill, Jones & Hale, P.A.*, by: *Robert L. Henry III* and *James D. Robertson*, for appellee.

D ONALD L. CORBIN, Justice. This case involves an allegation of attorney malpractice. Appellant Karen Barnes charged Fayetteville attorney John Everett with malpractice, alleg-

ing that Everett was negligent in advising her to settle her claim with an insurance agent, which, in turn, barred her claim against the insurance company. She filed suit against Everett in the Washington County Circuit Court in August 2000, and a jury trial was held in May 2001. The jury returned a verdict in favor of Everett, and Barnes now brings this appeal. Barnes raises five points for reversal, three of which challenge evidentiary rulings and two that challenge jury instructions. This appeal was certified to us from the Arkansas Court of Appeals, pursuant to Ark. Sup. Ct. R. 1-2(a)(5). We affirm.

The record reflects that Barnes was in an automobile accident on September 6, 1995, in which her vehicle was struck by another vehicle driven by Jerry Herring. It was later discovered that Herring, who had fled the scene of the accident, was uninsured. Barnes was insured by National Security Fire and Casualty Company, under a policy purchased by her father from Rebsamen Insurance, Inc. Barnes reported the accident and the fact that Herring was uninsured to Rebsamen. Rebsamen informed her that her policy was for liability only and did not provide uninsured motorist coverage. When Barnes inquired as to the status of her policy, Rebsamen produced a document, purporting to bear Barnes's signature, showing a written declination of uninsured motorist coverage. After reviewing the document, Barnes informed Rebsamen that the signatures on the documents were not hers, and that her last name had been misspelled three of the four times as "Barens."

Following her discovery of the forged signatures, Barnes made a claim against Rebsamen and National for payment of her damages. National settled with Barnes on the property damage caused to her vehicle, but refused further payment for her medical expenses.

Barnes hired Everett to represent her in a suit against both Rebsamen and National. Everett filed a complaint on her behalf in the Pulaski County Circuit Court in January 1997. The complaint charged both defendants with fraud and with violating the Arkansas Trade Practices Act. The complaint also alleged that under the doctrine of *respondeat superior*, National was liable for the

acts of its agent, Rebsamen. The complaint alleged further that Barnes was entitled to the full amount available for uninsured motorist coverage from National, which coverage was implied by operation of law because Barnes had never declined the coverage in writing.

Rebsamen answered the complaint, but National did not. A jury trial was scheduled in the Pulaski County Circuit Court in December 1997, before the Honorable Judge John Plegge. Rebsamen appeared for trial, but National did not. That morning, Everett negotiated a settlement for $10,000 with Rebsamen. Everett informed Barnes of the offer and advised her to take it. When Barnes inquired about the effect of the settlement on her suit against National, Everett informed her that her acceptance of the offer from Rebsamen would not impair her suit against National. Barnes accepted the offer. Thereafter, the trial court allowed Everett to proceed against National in a default trial. Because National had defaulted, the jury was only asked to consider the issue of damages. Thereafter, Everett presented his case and asked the jury for compensatory damages of $25,000 and punitive damages of $250,000. The jury returned a verdict of $25,000 compensatory damages and $500,000 in punitive damages.

Following the jury's award, National appeared before the Pulaski County Circuit Court and moved to set aside the default judgment. National alternatively sought a remittitur of the punitive damages. The trial court denied the motion to set aside, but reduced the award of punitive damages to $250,000. National then appealed.

The Arkansas Court of Appeals reversed and dismissed the judgment against National. *See National Sec. Fire & Cas. Co. v. Barnes*, 65 Ark. App. 13, 984 S.W.2d 80 (1999). First, the court determined that National was not in default, because Rebsamen's answer raised a common defense and thus inured to National's benefit. The court then held that under the theory of *respondeat superior*, Barnes's settlement with Rebsamen, the agent, released National, the principal, from liability. The decision was issued on January 13, 1999.

In August 2000, Barnes filed suit against Everett for attorney malpractice in the Washington County Circuit Court. The complaint alleged that Everett was negligent in advising her to accept the offer made by Rebsamen, and that his negligence was the proximate cause of her losing the judgment against National. A jury trial was held in May 2001, before the Honorable Judge Kim Smith.

During the trial, both Barnes and her father, Howard Barnes, testified that they had specifically asked Everett whether settling with Rebsamen would impair the suit against National, and that Everett had assured them that it would not.

Barnes also presented testimony from attorney Jeff Pence, who stated that, in his opinion, a lawyer practicing in Arkansas in December 1997 should have known that settling a claim with the agent, which was premised on a theory of *respondeat superior*, would have the effect of releasing the principal. Pence stated further that an attorney who failed to advise his client of this would be in violation of the standard of care at the time. On cross-examination, however, Pence acknowledged that the law would not release a principal following settlement with the agent if there was an independent claim still pending against the principal. Pence then admitted that the suit filed by Everett had stated an independent claim against National for breach of contract.

Everett testified that he was knowledgeable about the law of *respondeat superior*. He also testified that, at the time he advised Barnes to settle her claim with Rebsamen, he knew that the settlement with Rebsamen would release National from any claim of liability under *respondeat superior*. Everett maintained, however, that he advised Barnes to settle with Rebsamen because he believed that the complaint stated independent claims against National, specifically a claim of fraud and a claim for breach of contract for the uninsured motorist coverage, that would remain viable. Two other witnesses called by Everett echoed his testimony about the viability of the remaining claims against National. The jury found in favor of Everett, and this appeal followed.

We note at the outset that an attorney is negligent if he or she fails to exercise reasonable diligence and skill on behalf

of a client. *Pugh v. Griggs*, 327 Ark. 577, 940 S.W.2d 445 (1997); *Schmidt v. Pearson, Evans, and Chadwick*, 326 Ark. 499, 931 S.W.2d 774 (1996). To prevail on a claim of attorney malpractice, a plaintiff must prove that the attorney's conduct fell below the generally accepted standard of practice and that such conduct proximately caused the plaintiff damages. *Id*. To prove damages and proximate cause, the plaintiff must show that, but for the alleged negligence of the attorney, the result in the underlying action would have been different. *Id*. In this respect, a plaintiff must prove a case within a case, as he or she must prove the merits of the underlying case as part of the proof of the malpractice case. An attorney is not liable to a client when, acting in good faith, he or she makes mere errors of judgment. *Id*. Moreover, an attorney is not, as a matter of law, liable for a mistaken opinion on a point of law that has not been settled by a court of the highest jurisdiction and on which reasonable attorneys may differ. *Id*.

## I. Evidentiary Issues

▮ Barnes raises five points on appeal, the first three of which involve evidentiary issues. The decision to admit or refuse evidence is within the trial court's discretion, and we will not reverse the trial court's ruling absent an abuse of discretion and a showing of prejudice. *See Columbia Nat'l Ins. Co. v. Freeman*, 347 Ark. 423, 64 S.W.3d 720 (2002); *Madden v. Aldrich*, 346 Ark. 405, 58 S.W.3d 342 (2001); *Dodson v. Allstate Ins. Co.*, 345 Ark. 430, 47 S.W.3d 866 (2001). With this standard of review in mind, we discuss Barnes's arguments.

## A. Damages Awarded in the Default Trial

▮ Barnes first argues that the trial court erred in refusing to allow her to present evidence of the amount of damages obtained, a total of $525,000, in the default trial against National. She contends that the amount of damages was relevant to her claim of malpractice to show that, but for Everett's negligence, she would have been successful in her claim against National. She contends further that because the jurors were not informed of the amount of damages previously awarded, they were forced to speculate or guess as to the damages that would have been awarded.

The record reflects that this latter argument was not raised in the trial court. This court has repeatedly stated that it will not consider an argument raised for the first time on appeal. *See, e.g., Arkansas Blue Cross & Blue Shield v. Hicks*, 349 Ark. 269, 78 S.W.3d 58 (2002); *Laird v. Shellnut*, 348 Ark. 632, 74 S.W.3d 206 (2002); *Hurst v. Holland*, 347 Ark. 235, 61 S.W.3d 180 (2001). Accordingly, we will confine our review to the preserved issue of the evidence's relevance.

During a pretrial hearing, Everett sought to exclude this evidence on the ground that it was irrelevant and its admission would be unfairly prejudicial because it was the result of a default-judgment trial, where liability was not an issue and there was no defense at all. Barnes's attorney argued that while the jury may not be bound by the actual amount of the default judgment, it should be informed of all the facts and of what actually occurred in the underlying case. The trial court found that the evidence of the default judgment had little probative value, and that such value was substantially outweighed by the danger of unfair prejudice to Everett. The trial court explained:

> They were unrepresented, and to allow that to stand against this defendant is clearly wrong and not permitted under the law. You certainly will be given your opportunity to prove to the jury what you feel the damages should be under these facts if you prove negligence on behalf of the defendant. But for them to even hear what that jury did is so misleading because there was no one defending, there was only one defendant in there, there' was no defense counsel present to cross-examine the plaintiff's witnesses or to argue on behalf of Rebsamen or National Security that if it was relevant, which I don't think it is because it's not given in a fully contested case, it was not brought about by a jury hearing both sides of the case, but by a jury that only heard one side and did not hear anything from the other side. But if it is, has any probative value, then under Arkansas Rule of Evidence 403 that the unfair prejudice and misleading nature of that evidence outweighs any probative value that it might have.

The trial court then stated that Barnes could inform the jury that a favorable judgment was obtained, and that she was only prohibited from telling the jury the amount of the default judgment.

■ We find no error with the trial court's ruling. Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Ark. R. Evid. 401. *See also NationsBank, N.A. v. Murray Guard, Inc.*, 343 Ark. 437, 36 S.W.3d 291 (2001). A trial court's ruling on relevancy is entitled to great weight and will not be reversed absent an abuse of discretion. *Columbia Nat'l Ins. Co.*, 347 Ark. 423, 64 S.W.3d 720; *Arthur v. Zearley*, 337 Ark. 125, 992 S.W.2d 67 (1999). However, even relevant evidence may be excluded to prevent possible unfair prejudice or confusion "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Ark. R. Evid. 403. *See also Arkansas Dep't of Human Servs. v. Huff*, 347 Ark. 553, 65 S.W.3d 880 (2002); *NationsBank*, 343 Ark. 437, 36 S.W.3d 291. This court has consistently held that the determination of whether the probative value of admitting the evidence is substantially outweighed by its prejudicial effect is left to the sound discretion of the trial court, and that determination will not be reversed absent a manifest abuse of that discretion. *Id.*; *Edwards v. Stills*, 335 Ark. 470, 984 S.W.2d 366 (1998).

■ Here, the trial court found that the evidence of the amount of damages assessed by the jury in the default trial was of little probative value, given that neither Rebsamen nor National defended during the proceeding. The trial court found further that any probative value was substantially outweighed by the danger of unfair prejudice to Everett and the misleading nature of the evidence. Based on the record before us, we cannot say that the trial court manifestly abused its discretion in denying admission of the evidence under the circumstances.

B. *Statements Made During Closing Argument in Default Trial*

For her second evidentiary point, Barnes argues that the trial court erred in refusing to allow her to present evidence of alleged admissions made by Everett during the default trial as to the value of Barnes's damages. She argues further that, at a minimum, the

trial court should have allowed her to impeach Everett's testimony with these statements after he opened the door to this issue by testifying as to what he thought Barnes's claim was actually worth.

The evidence that Barnes refers to as admissions by Everett were actually statements made during his closing argument to the jury in the default trial. During the hearing below, Barnes's attorney sought to introduce the statements as substantive evidence of what Everett had previously believed Barnes's case was worth. In response, Everett argued that such statements could not be construed as admissions on his part; rather, he contended that they were merely part of an argument made on behalf of a client. The trial court agreed that the statements were the product of his zealous representation of his client and could not be considered as personal admissions. The trial court explained:

> And as you know, attorneys have a privilege in lawsuits to argue their positions and that of their clients and are free from defamation. You can't use those statements made in a lawsuit to try to sue a lawyer or another party for defamation. The law states that those statements are privileged and cannot be used in a defamation context. And I think that's the same issue we're getting into that this is an argument of the attorney. It's not a confession or an admission that is one given outside of the realm of the lawsuit. And over your objection, Mr. Cazort, I'm going to grant his motion as to statements made by Mr. Everett as to what the amount ought to be or what he argued to the jury or requested from the jury the amounts be. I previously ruled those amounts by the jury are subject to the motion in limine because of their frailty and the fact that only one side of the lawsuit was there arguing to receive those amounts. And for the same reasons, this is evidence that should not go before the jury as to what Mr. Everett argued on behalf of his client, and I'll note your objections to that ruling also.

Barnes now asserts that the trial court's ruling was erroneous, in large part due to the fact that during his testimony, Everett stated that he felt that $10,000 was a fair settlement of Barnes's case, because she only had $1,700 in medical bills and she did not "look like she was an injured person." The problem with this argument is that Barnes did not object to this testimony, nor

did she seek to impeach Everett with the statements he made to the jury in the default trial. Barnes's failure to make any objection below precludes us from addressing the argument on appeal. *Arkansas Blue Cross & Blue Shield*, 349 Ark. 269, 78 S.W.3d 58; *Laird*, 348 Ark. 632, 74 S.W.3d 206; *Hurst*, 347 Ark. 235, 61 S.W.3d 180. We are likewise precluded from addressing Barnes's argument that the evidence was admissible to challenge Everett's credibility under Ark. R. Evid. 806, as that argument was not made below. Accordingly, we confine our review to the argument made at trial, that the statements were substantive evidence of what Everett personally believed to be the value of Barnes's case.

██ ██ We agree with the trial court that such statements made on behalf of a client and under the duty to zealously represent the client may not be characterized as personal admissions on the attorney's part. Indeed, statements made by attorneys during opening statement or closing argument are not even considered as evidence at all. *See* AMI 4th 103(e); AMCI2d 101(e); *Union Pac. R.R. Co. v. Sharp*, 330 Ark. 174, 952 S.W.2d 658 (1997). The pertinent statements made by Everett were as follows. On the subject of compensatory damages, Everett said: "I believe that the evidence in this case would support a verdict in favor of Karen Barnes for twenty-five thousand dollars ($25,000) of actual debts." Regarding punitive damages, Everett said:

> I think your verdict should be, on punitive damages, ten times the amount of compensatory damages, two hundred and fifty thousand dollars ($250,000). I think the verdict should be that it's twenty-five thousand dollars ($25,000) of actual damage that Karen Barnes sustained in this accident, and it costs another two hundred and fifty thousand dollars ($250,000) for this insurance company, because of the way they treated this lady, because of lying about it, because of bogusing up papers, and sending them to her daddy, and lying about what they say, because they forged a name and didn't do it very well, and then you start checking the boxes after you get caught.

None of these statements is indicative of Everett's personal belief of the value of Barnes's claim. They are nothing more than an

argument made by a lawyer on behalf of a client. As such, the trial court was correct to exclude them as evidence in this case.

## C. Expert Testimony

For her third evidentiary point, Barnes argues that the trial court erred in allowing two witnesses called by Everett to testify that they believed that the court of appeals was in error in dismissing Barnes's claim against National in *National Sec. Fire & Cas. Co.*, 65 Ark. App. 13, 984 S.W.2d 80. The first witness, Judge John Plegge, who presided over the default trial, was asked if he agreed with the appellate decision, to which he replied: "Absolutely not." Judge Plegge later stated that "they made the wrong decision." The second witness, attorney Gail Matthews, was asked his opinion on the correctness of the court of appeals' decision, and Mr. Matthews replied: "It's just as wrong as it can be."

On appeal, Barnes argues that such testimony was objectionable and that the trial court erred in admitting it. Her argument, however, is procedurally barred because she failed to object to the testimony below. It is well settled that to preserve a point for appeal, a proper objection must be asserted at the first opportunity. *See Madden*, 346 Ark. 405, 58 S.W.3d 342; *Seeco, Inc. v. Hales*, 341 Ark. 673, 22 S.W.3d 157 (2000). The record here reveals that Barnes never objected to the testimony that she now challenges. Accordingly, she has waived this issue on appeal. *Id*. Furthermore, Barnes has failed to demonstrate that she was prejudiced, because she opened the door to this line of testimony by asking her own witness, attorney Jeff Pence, whether he agreed with the court of appeals' decision. *See Madden*, 346 Ark. 405, 58 S.W.3d 342; *Edwards*, 335 Ark. 470, 984 S.W.2d 366.

On a similar note, Barnes argues that the court of appeals' decision was the definitive statement of law that releasing an agent from liability, based on a theory of *respondeat superior*, thereby effects the release of the principal. She argues that the trial court should have formulated instructions outlining the decision and then instructed the jury that it was bound by this statement of the law. This argument, however, like the previous one, was not raised below. Accordingly, we will not address it on appeal.

## II. Jury Instructions

 Barnes's remaining two points raise issues pertaining to the trial court's rulings on jury instructions. Particularly, Barnes argues that the trial court erred (1) in refusing to give a modified AMI instruction submitted by her, and (2) in giving a non-model instruction requested by Everett. We note at the outset our well-settled law regarding the giving or refusal to give jury instructions. This court has consistently held that a party is entitled to a jury instruction when it is a correct statement of the law, and there is some basis in the evidence to support giving the instruction. *See Dodson*, 345 Ark. 430, 47 S.W.3d 866; *Coca-Cola Bottling Co. v. Priddy*, 328 Ark. 666, 945 S.W.2d 355 (1997). However, this court will not reverse a trial court's refusal to give a proffered instruction unless there was an abuse of discretion. *Id.* When instructions are requested that do not conform to AMI, they should be given only when the trial judge finds that the AMI instructions do not contain an essential instruction or do not accurately state the law applicable to the case. *Tyson Foods, Inc. v. Davis*, 347 Ark. 566, 66 S.W.3d 568 (2002). The model AMI instructions are to be used as a rule, and non-AMI instructions should only be used when an AMI instruction cannot be modified. *Id.* (citing *Parker v. Holder*, 315 Ark. 307, 867 S.W.2d 436 (1993)). Furthermore, it is not error for the trial court to refuse a proffered jury instruction when the stated matter is correctly covered by other instructions. *Dodson*, 345 Ark. 430, 47 S.W.3d 866. With this standard of review in mind, we discuss the individual points.

### A. Refusal to Give AMI Civ. 4th 903 as Modified

Barnes argues that the trial court erred in refusing to give a modified version of AMI Civ. 4th 903 that she submitted below. Her proposed instruction would have informed the jury:

> You are instructed to assume there was in force in the State of Arkansas at the time of this occurrence a law which provided that a settlement with a[n] agent for any alleged harm by a party suing that agent, automatically releases the principal from any liability, unless it can be shown by a preponderance of the evidence

that the principal was guilty of negligence or intentional conduct, independent of and apart from that of the agent.

During the proceedings below, Barnes's counsel candidly admitted that AMI Civ. 4th 903 is designed to inform the jury of the substance of a statute or code provision, as opposed to a holding from case law, and that he knew his modification was "a little unusual." The trial court then asked counsel if he had any legal authority stating that the model instruction could be used in this manner, to which counsel responded that he did not.

Ultimately, the trial court concluded that the proffered instruction was not a proper form of AMI Civ. 4th 903. The trial court also found that the instruction was improper because the issue of whether Everett's conduct was negligent was a matter for the jury to decide based on the expert testimony presented. As Everett points out on appeal, the trial court's ruling is consistent with AMI Civ. 4th 1512, which was given in this case and provided:

> In performing legal services for a client, an attorney must possess and use with reasonable diligence and skill ordinarily used by attorneys acting in the same [or] similar circumstances. A failure to meet this standard is negligence. In deciding whether John Everett possessed and used with reasonable diligence the skill the law required of him, you may consider only the evidence presented by expert witnesses.

We cannot say that the trial court abused its discretion in refusing to instruct the jury as proffered by Barnes. In the first place, AMI Civ. 4th 903 is designed to instruct a jury that violation of a statute, while not necessarily an act of negligence, may be considered along with other facts and circumstances as evidence of negligence. *Parker*, 315 Ark. 307, 867 S.W.2d 436. Barnes's counsel admitted that his proposed modification was not in line with the design of the model instruction.

In the second place, we agree with the trial court that the issue whether Everett was negligent was for the jury to decide based on the standard in the legal community as testified to by the expert witnesses. Our case law has consistently held that the attorney's conduct must be measured against the generally

accepted standard of practice. *See, e.g., Pugh,* 327 Ark. 577, 940 S.W.2d 445; *Schmidt,* 326 Ark. 499, 931 S.W.2d 774. Such a measurement plainly requires expert testimony as to what the standard of practice is, unless the trial court determines that such testimony is not necessary because the case falls within the common-knowledge exception. *See* AMI Civ. 4th 1512, *NOTE ON USE.* AMI Civ. 4th 1512 properly instructed the jury on this issue.

### B. Giving of a Non-Model Instruction

For her final point, Barnes argues that the trial court erred in giving a non-model instruction proffered by Everett, which provided:

> A lawyer's conduct must be judged in light of all the surrounding circumstances existing before and during the course of litigation and not solely according to the hindsight gained after completion of the litigation.

During the instruction conference below, Barnes's counsel objected to the instruction because Everett had not offered any Arkansas case law showing that the instruction accurately represents the law in this state. He candidly admitted, however, that he did not believe that the proffered instruction was an incorrect statement of the law. The trial judge found that the instruction was a correct statement of the law that was not covered by a model instruction, and he instructed the jury accordingly.

On appeal, Barnes contends that the instruction was improper because it is a deviation from AMI and because the instruction, particularly the language regarding hindsight gained after completion of the litigation, was highly prejudicial because it amounted to a comment on the evidence. This is not the argument made below. It is well settled that an appellant may not change the grounds for objection on appeal, but is limited by the scope and nature of his or her objections and arguments presented at trial. *See National Front Page, LLC v. State,* 350 Ark. 286, 86 S.W.3d 848 (2002); *City of Benton v. Arkansas Soil and Water Conserv. Comm'n,* 345 Ark. 249, 45 S.W.3d 805 (2001). Accordingly, we will not address her argument for the first time on appeal.

Affirmed.

GLAZE, J., not participating.