178 P.3d 597

**Timothy S. HEINZE, Plaintiff–Appellant,**

v.

**Charles B. BAUER, Defendant–Respondent.**

No. 33579.

Supreme Court of Idaho,
Boise, December 2007 Term.

Jan. 25, 2008.

Rehearing Denied March 14, 2008.

**234**

Ellis, Brown, & Sheils, Boise, for appellant. Allen Ellis argued.

Moffatt, Thomas, Barrett, Rock & Fields, Boise, for respondent. Mark Prusynski argued.

HORTON, Justice.

This is a legal malpractice action. Appellant Timothy Heinze appeals from the district court's grant of summary judgment in favor of Respondent Charles Bauer dismissing Heinze's complaint. This Court is asked to decide whether Heinze is judicially estopped from pursuing a claim that Bauer negligently recommended Heinze accept the terms of a divorce settlement after Heinze stipulated to the settlement, under oath, in court. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Heinze retained Bauer, an attorney, to represent him in his divorce. The divorce action presented two main issues: the division of the community estate and the custody arrangement pertaining to the couple's child. The divorce trial started; opening statements were given, and the first witness, a child custody evaluator, was called to testify. Before direct examination of the child custody evaluator was finished, the magistrate brought counsel for the parties into chambers for an off-the-record meeting regarding the parties' claims. Shortly after this meeting, Bauer and Heinze's ex-wife's attorney began discussions concerning a possible settlement, whereby the parties would stipulate to joint custody of the child and a Property and Debt Settlement (PDS) that divided the community estate.

Heinze and Bauer discussed the PDS submitted by Heinze's ex-wife. Bauer recommended Heinze accept the settlement despite Heinze's expressed concern that "the [PDS], prepared by opposing counsel, may not be correct with respect to both debts and assets." The settlement was presented to the court, and the magistrate discussed some, but not all, of the terms of the settlement, including who would retain the family home and the custody agreement. The judge then placed the parties under oath. Heinze acknowledged that he agreed with the terms of the settlement and would abide by them.

Two days after the settlement, Heinze sent Bauer an email, expressing misgivings about the terms of the property settlement. In that email, he stated: "I guess I'm just really uncomfortable with the process, and how quickly I was asked to decide something that I obviously didn't understand at the time. It is very different than anything I have previously reviewed." In accordance with Heinze's wishes, Bauer thereafter filed a motion to set aside the settlement. The magistrate denied this motion.

Subsequently, Heinze brought this action, alleging Bauer negligently represented him in the divorce proceedings with resultant damages in excess of $100,000. Bauer moved for summary judgment, arguing *inter alia* that Heinze's claim was barred by the doctrine of judicial estoppel. The district court granted Bauer's motion for summary judgment, concluding the case was controlled by this Court's decision in *McKay v. Owens*, 130 Idaho 148, 937 P.2d 1222 (1997). Soon thereafter, the district court entered judgment dismissing Heinze's claim against Bauer, with prejudice. Heinze moved for reconsideration, arguing the case was distinguishable from *McKay*. The district court denied the motion to reconsider. Heinze has timely appealed from the judgment and the order denying his motion for reconsideration.

## II. STANDARD OF REVIEW

In reviewing a ruling on a summary judgment motion, this Court employs the

same standard used by the district court. *Sprinkler Irrigation Co. v. John Deere Ins. Co., Inc.,* 139 Idaho 691, 695, 85 P.3d 667, 671 (2004). Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." I.R.C.P. 56(c). This Court liberally construes all disputed facts in favor of the non-moving party and will draw all reasonable inferences and conclusions supported by the record in favor of the party opposing the motion. *Lockheed Martin Corp. v. Idaho State Tax Comm'n,* 142 Idaho 790, 793, 134 P.3d 641, 644 (2006).

### III. ANALYSIS

**A. Heinze is chargeable with full knowledge of the attendant facts surrounding the settlement prior to adopting the settlement.**

 This Court adopted the doctrine of judicial estoppel in *Loomis v. Church,* 76 Idaho 87, 277 P.2d 561 (1954). In *Loomis,* this Court held that a litigant who obtains a judgment, advantage, or consideration from one party through means of sworn statements is judicially estopped from adopting inconsistent and contrary allegations or testimony, to obtain a recovery or a right against another party, arising out of the same transaction or subject matter. *Id.* at 93–94, 277 P.2d at 565. Judicial estoppel "precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." *McKay,* 130 Idaho at 152, 937 P.2d at 1226 (quoting *Rissetto v. Plumbers & Steamfitters Local 343,* 94 F.3d 597, 600 (9th Cir.1996)). The policies underlying judicial estoppel are general considerations of the orderly administration of justice and regard for the dignity of judicial proceedings. *Id.* (citing *Rissetto,* 94 F.3d at 601). Judicial estoppel is intended to prevent a litigant from playing fast and loose with the courts. *Id.*

This Court considered judicial estoppel in the context of legal malpractice in *McKay.* The district court granted summary judgment based on the factual similarities between the instant action and *McKay.* In

*McKay,* the plaintiff brought a medical malpractice claim on behalf of herself and her child, who was severely disabled at birth, against St. Luke's Regional Medical Center and her obstetrician. 130 Idaho at 150, 937 P.2d at 1224. During the course of litigation, the plaintiff's attorney negotiated a proposed settlement with which the plaintiff disagreed. However, at a minor's compromise hearing, the plaintiff represented to the court that she accepted the settlement. *Id.* The plaintiff later filed a malpractice action against her attorney alleging that he negligently settled her malpractice claim. *Id.* at 151, 937 P.2d at 1225. The trial court granted the defendant's motion for summary judgment, finding the plaintiff was judicially estopped from asserting the malpractice claim. *Id.* This Court affirmed the trial court on appeal. *Id.* at 159, 937 P.2d at 1233.

 Judicial estoppel is intended to prevent abuse of the judicial process by deliberate shifting of positions to suit the exigencies of a particular action. *Id.* at 153, 937 P.2d at 1227. Consequently, judicial estoppel does not apply to a litigant who wishes to repudiate a position inadvertently taken due to mistake, fraud, or duress. *Id.* Heinze argues the doctrine of judicial estoppel is inapplicable to the instant action because he did not learn of the facts giving rise to the malpractice claim until after the settlement.

 In *McKay* this Court addressed the situation where a represented litigant settles a case on the record, but later learns of facts giving rise to a legal malpractice claim against the attorney. *Id.* at 155, 937 P.2d at 1229. Under these circumstances, the Court noted the policies behind judicial estoppel will not be furthered and the doctrine should not be applied. *Id.* The Court stated:

For guidance purposes and to avoid misapplication of judicial estoppel, it should be made clear that the concept should only be applied when the party maintaining the inconsistent position either *did have, or was chargeable with, full knowledge of the attendant facts prior to adopting the initial position.* Stated another way, the concept of judicial estoppel takes into account not only what a party states under

oath in open court, but also what that party knew, or should have known, at the time the original position was adopted. *Thus, the knowledge that the party possesses, or should have possessed, at the time the statement is made is determinative* as to whether that person is "playing fast and loose" with the court.

*Id.* (emphasis added).

Heinze asserts the errors within the PDS did not come to light until after the stipulation was entered on the record and therefore the doctrine of judicial estoppel should not apply. Thus, as a threshold matter, this Court must consider the evidence relating to what Heinze knew, or should have known, at the time of the settlement.

1. *The district court incorrectly determined Heinze understood the terms of the PDS.*

In its first memorandum decision, the district court found that Heinze understood the terms of the settlement, stating Heinze "acknowledged that he understood the terms of the settlement," and "Heinze stated in open court, under oath, that he understood the terms of the settlement offer and that he agreed...." This finding was apparently based upon the following dialogue between Heinze and the magistrate:

THE COURT: That having been said, and without a great repetition of everything that we have talked about, because we have talked for a long time—and I have probably done more than my share—Mr. Heinze, you brought this matter. Are you in agreement today?

MR. HEINZE: I am.

THE COURT: And do you agree to abide by the terms and conditions?

MR. HEINZE: I do.

This testimony demonstrates that Heinze represented that he was entering into an agreement and that he agreed to be bound by the terms of that agreement. Significantly, however, this testimony did not address

Heinze's understanding of the terms of that agreement.

■ Heinze did not file his own affidavit in connection with the summary judgment proceedings. Accordingly, there is no direct testimony in the record that he was unaware of errors in the PDS at the time of the settlement. Instead, Heinze relies on his email to Bauer that expressed misgivings with the settlement he reached in a time pressured environment. Summary judgment proceedings are generally decided on the basis of admissible evidence.[1] I.R.C.P. 56(e). Normally, a party would not be entitled to rely on an unsworn document that he or she authored in order to demonstrate the existence of a genuine issue of material fact. However, Bauer has raised no objection, either before the trial court or on appeal, to consideration of the email. For this reason alone, we consider the email as evidence Heinze did not understand the terms of the PDS. Accordingly, we conclude the district court erred in its statement that Heinze represented that he understood the terms of the settlement.

However, in its memorandum decision on the motion for reconsideration, the district court concluded that, under *McKay,* judicial estoppel may be imposed based on what the estopped party knew or should have known. This suggests that the district court's decision on reconsideration was based on what Heinze should have known, and not what he actually knew. Therefore, we consider whether the district court properly concluded that Heinze was chargeable with knowledge of the terms of the PDS.

2. *The district court correctly determined Heinze was chargeable with full knowledge of the attendant facts prior to adopting the PDS.*

■ This inquiry requires us to focus on Heinze's knowledge at the time he accepted the settlement on the record and the circumstances surrounding the settlement. We observe that the question of whether a party is

---

1. The district court was certainly aware of the lack of admissible evidence on this point. In its order denying Heinze's motion for reconsideration, the Court observed: "As to the argument

that Heinze was unaware of the errors contained in the agreement initially reached in the divorce court, the Court notes that there is no affidavit from Heinze so stating...."

chargeable with knowledge is an issue that can properly be decided by way of summary judgment. *Figueroa v. Merrick,* 128 Idaho 840, 845, 919 P.2d 1041, 1046 (1996) (holding that there was no issue of material fact regarding the application of the doctrine of equitable estoppel, which includes the element that the party asserting estoppel did not know the truth as to the subject matter of the alleged misrepresentation). We will first address Heinze's argument that Bauer's statements in support of the motion to set aside the stipulation ought to be considered "to block the affirmative defense of judicial estoppel" before deciding the merits of Heinze's claim.

### a. Bauer's statements made in support of Heinze's motion for reconsideration are not admissions.

Heinze initially opposed Bauer's efforts to secure summary judgment based on judicial estoppel by distinguishing *McKay* on two grounds: the *McKay* settlement required judicial approval; and Heinze's claim of legal malpractice was not an inconsistent position from his acceptance of the terms of the divorce settlement. After the district court granted summary judgment in Bauer's favor, Heinze's motion for reconsideration presented the new argument that he did not learn of the facts giving rise to the malpractice claim until after the settlement. In support of this new argument, Heinze relies on language from a motion filed by Bauer on Heinze's behalf in the divorce action. The issue before this Court is whether language in a motion signed by Bauer is an admission that may be considered to demonstrate the existence of a genuine issue of material fact. We conclude that it is not.

As a consequence of Heinze's unhappiness with the terms of the stipulated resolution of the divorce action, Bauer objected to Heinze's ex-wife's proposed judgment and decree and moved to set aside the stipulation. The motion suggests, but does not state, that Heinze was unaware of errors in the PDS. Rather, the motion asserted the stipulation should be set aside in view of "the errors which have come to light." The motion further asserted: "The Plaintiff [Heinze] has identified significant errors in the document used as the basis for the stipulation ... which errors, together with the manner and character of the proposed 'agreement' itself, create a fundamental unfairness and inequity in the proposed decree."

On appeal to this Court, Heinze asserts that this statement "contradicts [Bauer's] argument that [Heinze] had 'full knowledge' of 'significant errors' at the time he assented to the settlement agreement." In support of this argument, Heinze directs the Court to the language of Rule 11(a)(1), I.R.C.P., which provides that an attorney's signature is a certification "that to the best of the signer's knowledge, information, and belief after reasonable inquiry *it is well grounded in fact.* ..." (emphasis added).

The issue whether an attorney's statements in the course of representation of a client may be used against the attorney in subsequent legal malpractice litigation has not been the subject of many reported decisions. Indeed, Heinze does not direct us to a single decision which has adopted the position he advocates. Bauer directs us to a single case, *Barnes v. Everett,* 351 Ark. 479, 95 S.W.3d 740 (2003).

In *Barnes,* the Arkansas Supreme Court concluded that statements made by an attorney as to his client's damages in closing argument before a jury were not substantive admissions that could be used at trial in a subsequent legal malpractice action. The holding in *Barnes* is not immediately persuasive. In reaching its conclusion, the Arkansas Supreme Court noted that arguments by attorneys "are not even considered as evidence at all." *Id.* at 747. The court further observed that the attorney's statements regarding an appropriate award of damages were not statements of personal belief as to the value of his client's claim. *Id.* The court dismissed the statements as "nothing more than an argument made by a lawyer on behalf of a client." *Id.* More significantly, however, for purposes of the issue before us, oral argument does not implicate the certification requirement of Rule 11(a)(1), I.R.C.P.

The only reported decision that we have discovered relating to this issue is *Barcola v. Hourigan, Kluger & Quinn, P.C.,* 82 Pa. D &

C. 4th 394 (Pa.Com.Pl.2006). In that case, the Pennsylvania court considered whether representations by a law firm in pleadings governed by that State's analogue to our Rule 11(a)(1), I.R.C.P. could be used as admissions in a subsequent legal malpractice action. The court refused to so hold. In reaching this conclusion, the court observed that lawyers have an " 'overriding duty of zealous representation of a client's interest' and 'an obligation to put their clients' interests ahead of their own.' " *Id.* at 407–08 (quoting *Reese v. Danforth,* 486 Pa. 479, 406 A.2d 735, 738 (1979) and *In re Cendant Corp. Sec. Litig.,* 404 F.3d 173, 186 (3d Cir.2005)). In this regard, *Barcola* is in accord with the decision in *Barnes.* In *Barnes,* the court stated "statements made on behalf of a client and under the duty to zealously represent the client may not be characterized as personal admission on the attorney's part." 95 S.W.3d at 747.

We agree with these courts. Attorneys owe fundamental duties to their clients. Among the most important of these duties are the duties of zealous representation and loyalty. *See* Idaho Rules of Professional Conduct, Preamble: A Lawyer's Responsibilities (2004) (stating "As advocate, a lawyer zealously asserts the client's position under the rules of the adversary system."); *Blough v. Wellman,* 132 Idaho 424, 426, 974 P.2d 70, 72 (1999) (stating "The relationship of client and attorney is one of trust ... obligating the attorney to discharge that trust with complete fairness, honor, honesty, loyalty, and fidelity."). Indeed, the United States Supreme Court has characterized this duty of loyalty as "perhaps the most basic of counsel's duties...." *Strickland v. Washington,* 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674, 696 (1984).

■ In reaching our conclusion that statements made on behalf of a client in the course of representation are not personal admissions that may be used against the attorney in subsequent litigation, we note the potential impact of a different result. "If statements and arguments made by counsel in furtherance of a client's claim were routinely deemed to constitute binding admissions against a lawyer in a subsequent legal

malpractice action, it could conceivably have a chilling impact upon the vigor and resulting effectiveness of counsel's advocacy." *Barcola,* 82 Pa. D & C 4th at 411.

The only evidence in the record regarding this issue was Bauer's deposition testimony. He explained the reference to errors in his motion to set aside the stipulation as follows:

> It has errors in the sense that Mr. Heinze was dissatisfied with it and wished to try to set it aside. And I, as his attorney, put forth that position. There were differences and things that he felt were not properly taken into account.

In this case, Bauer's statements were clearly those of an advocate. For this reason, we conclude that Bauer's statements in the motion may not be considered as admissions for purposes of resisting the motion for summary judgment.

This conclusion does not mean that every statement by a lawyer in the course of earlier litigation may not be used against that lawyer in a subsequent malpractice action. Representations of fact, purporting to be on the basis of the lawyer's personal knowledge, may well be used against that lawyer in subsequent proceedings. *Barcola,* 82 Pa. D & C 4th at 408 n. 3. Certainly, statements in an affidavit of an attorney purporting to be based upon personal knowledge would not be governed by our holding today. *Hicks v. Nunnery,* 253 Wis.2d 721, 643 N.W.2d 809, 830 (Wis.Ct.App.2002) (holding an attorney's "mea culpa" affidavit in post-conviction relief proceedings admissible in subsequent malpractice action.).

> **b. The district court did not make an improper credibility determination when it concluded Heinze was chargeable with full knowledge of the attendant facts surrounding the settlement.**

■ Heinze argues the district court improperly assessed his credibility by ruling that he was chargeable with full knowledge of the errors in the settlement, despite the fact that Heinze argued that he did not understand the settlement. Heinze further ar-

gues his credibility is an issue of fact that can only be resolved by the trier of fact.

■ We agree that the district court was not free to resolve issues of credibility on summary judgment. *Intermountain Forest Mgmt., Inc. v. Louisiana Pac. Corp.,* 136 Idaho 233, 238, 31 P.3d 921, 926 (2001) (citing *Argyle v. Slemaker,* 107 Idaho 668, 671, 691 P.2d 1283, 1285 (1984)). However, we conclude that the district court's determination that Heinze was chargeable with full knowledge of the attendant facts did not constitute an impermissible credibility determination.

The only evidence upon which Heinze relies is the email sent to Bauer after the in-court stipulation, in which he expressed that he was "just really uncomfortable with the process, and how quickly I was asked to decide something that I obviously didn't understand at the time." This statement, while reasonably giving rise to the inference that Heinze did not understand the terms of the PDS, does not address whether Heinze is *chargeable* with full knowledge of any errors in the settlement. The chargeability inquiry did not require the district court to determine whether Heinze understood the settlement. Rather, the district court was responsible for evaluating what Heinze should have known about the settlement. This inquiry focuses on whether Heinze was so familiar with the attendant circumstances that he should have recognized any mistakes in the settlement. We conclude the district court did not intrude upon the province of the trier of fact and make an improper credibility determination.

**c. The district court properly concluded that Heinze was chargeable with knowledge of the contents of the PDS.**

■ It is notable that Heinze did not offer his own testimony, by way of affidavit or deposition, relating to the circumstances under which he entered into the stipulation for resolution of the divorce action. In the absence of such evidence, the district court was forced to decide the question of whether Heinze was chargeable with knowledge of the errors in the PDS on the basis of Bauer's deposition testimony and excerpts of Heinze's deposition.

In support of his claim that Bauer was negligent, Heinze has identified errors within the PDS upon which the magistrate divided the community estate. The refrigerator was listed twice with values of $700 and $500, both of which were attributed to Heinze's share of the community estate. Heinze's ex-wife's laptop computer, printer, antique silver, Waterford Crystal, and vacuum cleaner were omitted from the property awarded her under the terms of the PDS. Heinze's ex-wife's attorney fees were not allocated to her. The wedding china, flatware, and crystal, respectively, were allocated to Heinze's ex-wife in the PDS, but the values for those items were mistakenly attributed to Heinze's share of the community estate. Heinze also argues the community property interest in his retirement accounts were not accurately calculated. Heinze alleges the errors in the PDS amounted to an inequitable distribution of the community estate to his detriment, in excess of $100,000. Finally, Heinze argues the PDS lacked clarity because it contained numerous notations and strikeouts.

Heinze directs the Court's attention to the fact that there was no discussion of the terms of the settlement while he was under oath, to further support his argument that any mistakes in the settlement did not "come to light" until after the stipulation. Heinze also directs the Court's attention to his email to Bauer after the settlement indicating Heinze did not understand the settlement.

The record before this Court demonstrates that Heinze is chargeable with full knowledge of the attendant facts prior to the in-court stipulation. Heinze was intimately familiar with the assets and liabilities of the community estate prior to the settlement. Heinze had prepared a summary report of the credit card purchases made by his ex-wife leading up to the divorce and reviewed, line-by-line, an earlier property and debt schedule submitted by his ex-wife, which was similar to the PDS. Heinze made notations of his concerns on the schedule. Heinze reviewed the terms of the PDS with Bauer prior to settling, and had the opportunity to ask the magistrate any questions regarding

the terms of the settlement. However, Heinze only asked a question concerning the custody arrangement of his child.

Bauer testified that he disagreed with Heinze's claim that he did not have an adequate opportunity to review the PDS. Bauer and Heinze reviewed the PDS together on the date of the settlement and were aware of "minor" discrepancies in the document. We note that the allegations in Heinze's complaint are consistent with Bauer's testimony. The complaint alleges that Heinze reviewed the PDS prior to the settlement and advised Bauer that it "may not be correct with respect to both debts and assets." Bauer testified that Heinze discussed his objections to the proposed settlement, that Bauer recommended that Heinze accept the terms of the settlement and that Heinze, in fact, accepted the settlement offer. Bauer testified that the PDS "did reflect the settlement that we agreed on." Therefore, we determine that the district court properly concluded that Heinze was chargeable with full knowledge of the contents of the PDS.

### B. The elements of judicial estoppel are met in the instant case.

██ Judicial estoppel is applied when a litigant obtains a judgment, advantage, or consideration from one party, through means of sworn statements, and subsequently adopts inconsistent and contrary allegations or testimony to obtain a recovery or a right against another party, arising out of the same transaction or subject matter. *Loomis,* 76 Idaho at 93–94, 277 P.2d at 565.

Heinze argues this Court should not apply the elements of judicial estoppel articulated in *Loomis.* Rather, he argues the Court should apply the elements of judicial estoppel adopted by the United States Supreme Court in *New Hampshire v. Maine,* 532 U.S. 742, 750–51, 121 S.Ct. 1808, 1815, 149 L.Ed.2d 968, 977–78 (2001). In *New Hampshire,* the court exercised original jurisdiction in a case involving a boundary dispute between New Hampshire and Maine.[2] *New Hampshire*

identified three considerations in determining whether to apply judicial estoppel:

> First, a party's later position must be 'clearly inconsistent' with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled.' ... A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Id.* at 750–51, 121 S.Ct. at 1815, 149 L.Ed.2d at 978 (citations omitted).

We have previously considered the decision in New Hampshire as it relates to application of judicial estoppel. *A & J Constr. Co., Inc. v. Wood,* 141 Idaho 682, 687, 116 P.3d 12, 17 (2005). We did so only because the first proceeding, which was the asserted basis for judicial estoppel, occurred in federal bankruptcy court. We noted the factors set forth in *New Hampshire* are "factors a court *may* consider," but are not required elements. *Id.* (emphasis in original) (citing *Hamilton v. State Farm Fire Cas. Co.,* 270 F.3d 778, 782 (9th Cir.2001)). We further noted that the *New Hampshire* court stated " '[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle.' " *Id.* (quoting *New Hampshire,* 532 U.S. at 750, 121 S.Ct. at 1815, 149 L.Ed.2d at 978 (citations omitted)). In *New Hampshire,* the court stated that the enumerated factors were not "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." 532 U.S. at 751, 121 S.Ct. at 1815, 149 L.Ed.2d at 978. The court noted that additional considerations "may inform" the doctrines application. *Id.*

We have consistently applied the rule announced in *Loomis* when deciding issues of application of the doctrine of judicial estoppel in Idaho. *Smith v. U.S.R.V. Properties, LC,*

---

**2.** 28 U.S.C. § 1251(a) grants the U.S. Supreme Court "original and exclusive jurisdiction of all

controversies between two or more States."

141 Idaho 795, 800, 118 P.3d 127, 132 (2005); *A & J Constr.*, 141 Idaho at 684–85, 116 P.3d at 14–15; *McKay*, 130 Idaho at 152, 937 P.2d at 1226; *Wolford v. Tankersley*, 107 Idaho 1062, 1075, 695 P.2d 1201, 1214 (1984). We are not persuaded that we should depart from this well-established body of law in favor of the *New Hampshire* approach.

■ Applying the rule announced in *Loomis* to the instant case, we conclude Heinze obtained an advantage from his ex-wife. In the settlement, Heinze received a final divorce, secured joint custody of his child, and a division of the community estate, by which he was able to retain the marital home to preserve a sense of continuity for his child. This advantage was obtained through sworn statements. Under oath, Heinze was asked if he was in agreement with the settlement, to which he replied: "I am." The Court also asked if Heinze would agree to abide by the terms and conditions of the settlement, to which he replied: "I do." Heinze subsequently adopted an inconsistent and contrary position in the present action by asserting that the settlement was inadequate.

■ The instant action arises out of the same transaction or subject matter as the underlying divorce action. As this Court noted in *McKay*, while an attorney who represented a client in a preceding action was not a party to the preceding case, the attorney is so intimately intertwined with that action that any legal malpractice action stemming from that representation arises out of the same transaction. *McKay*, 130 Idaho at 154, 937 P.2d at 1228. Therefore, the district court properly concluded that Heinze was judicially estopped from bringing a malpractice claim against Bauer.

Heinze argues that *McKay* is distinguishable from the instant action because the court in *McKay* was required by statute to undertake a review of the documents with a special vigilance for the minor whose rights were affected by the compromise, but no such statute required the magistrate to review the record with a special vigilance for either Heinze or his ex-wife. We are not persuaded by this argument. In *McKay*, we did not hold that judicial estoppel only ap-

plies to settlements reviewed or approved by a judge. Further, the magistrate who presided over Heinze's divorce was required to consider the best interests of the child in determining whether to accept the child custody component of the parties' settlement. I.C. § 32–717.

### IV. CONCLUSION

The district court properly applied the doctrine of judicial estoppel. Accordingly, we affirm the grant of summary judgment. Costs are awarded to Respondent.

Chief Justice EISMANN, Justices BURDICK, J. JONES and W. JONES concur.

